

ORIGINAL
FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 29 2011

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

RWS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SCOTT DEWIND, SUSAN FRONSOE, :
LAURIE F. BENNETT, JANE D. :
CHASON, GERALD M. HOLBROOK, :
and MICHAEL S. FRONSOE :
individually, as Members of Janes LLC, :
and in their capacity as beneficiaries of :
the 1967 Jane Brooks Holbrook Trust, :
and other alleged trusts created by the :
Defendants, :
:
Plaintiffs, :
:
v. :
:
JP MORGAN CHASE & CO., JOHN F. :
CALLAN, JOHN M. PHILLIPS, :
MICHAEL P. SESSA , FOLEY & :
LARDNER, LLP, and JANES LLC, :
:
Defendants. :

CIVIL ACTION FILE
NO. 1:11-CV-3326

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1441(c) and 1446(b), Defendants JP Morgan Chase

& Co., John F. Callan, John M. Phillips, Michael P. Sessa, Foley & Lardner, LLP,

and Janes LLC (collectively, "Defendants") file this Notice of Removal. The basis

for removal to this Court from the Superior Court of Fulton County, State of

Georgia is federal question jurisdiction. *See* 28 U.S.C. § 1331. On August 29,

2011, Plaintiffs filed an amended complaint that asserts numerous new claims against the Defendants, including a claim for alleged violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. 1961, *et seq*. This new claim serves as the grounds for federal question jurisdiction.

Plaintiffs' original complaint asserted only one claim, which was for an accounting. This notice of removal, therefore, is timely because it is filed within thirty days after service or receipt otherwise of the amended complaint, which is the pleading from which the Defendants could first ascertain that the case is one that has become removable. *See* 28 U.S.C. § 1446(b).

A copy of all pleadings, process, and orders served in the State Court action is attached.

Respectfully submitted, this 29th day of September, 2011.

Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget Bobick James
Georgia Bar No. 065014

Caldwell & Watson, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
Main: (404) 843-1956
Fax: (404) 843-2737
*Attorneys for Defendants*

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE

MAY 16 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

Scott DeWind, Susan Fonsoe, Lauri F. Bennett,    ]
Jane D. Chason, Gerald M. Holbrook              ]
and Michael S. Fonsoe individually, as Members   ]
of Janes LLC., and in their capacity as beneficiaries ]
of the 1967 Jane Brooks Holbrook Trust, and      ]
other alleged trusts set up by the Defendants,   ]
                                                 ]      Civil Action # 2011 CV 200617
*Plaintiffs,*                                      ]
                                                 ]
v.                                               ]
                                                 ]
JP Morgan Chase & Co., John F. Callan,           ]
John M. Phillips, Michael P. Sessa,              ]
Foley & Lardner, LLP, and Janes LLC,             ]
                                                 ]
*Defendants.*                                      ]

## COMPLAINT

COME NOW THE PLAINTIFFS, Scott Dewind, Susan Fonsoe, Lauri F. Bennett, Jane D. Chason, Gerald M. Holbrook , and Michael S. Fonsoe individually, as Members of Janes LLC., and in the capacity as beneficiaries, of the 1967 Jane Brooks Holbrook Trust and certain other alleged trusts (collectively, "Plaintiffs"), and file this, their Complaint against JP Morgan Chase & Co. ("JPMorgan"), John F. Callan ("Callan"), John M. Phillips ("Phillips"), Michael P. Sessa ("Sessa"), Foley & Lardner, LLP ("Foley"), and Janes LLC, and respectfully show as follows:

1.

Plaintiffs are citizens of several states, including Georgia and Wisconsin and consent to this court's jurisdiction.

2.

Defendant JP Morgan Chase & Co. is a national banking association, a foreign corporation registered with the Secretary of State to do business in Georgia. It may be served with process through its registered agent, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

3.

Defendants John F. Callan, John M. Phillips, and Michael P. Sessa are natural persons, and residents of the State of Wisconsin. Process may be served upon John F. Callan at 777 E. Wisconsin Avenue, Milwaukee, WI 53202-5306. Process may be served upon John M. Phillips at 111 E. Wisconsin Avenue, 22nd Floor, Milwaukee, WI 53202. Process may be served upon Michael P. Sessa at 111 E. Wisconsin Avenue, 22nd Floor, Milwaukee, WI 53202.

4.

Defendant Foley & Lardner, LLP, is a law firm with its practice in several states. Its primary office is in Wisconsin, and it may be served with process through its registered agent, F&L Corp., 777 E Wisconsin Ave., Ste. 3800, Milwaukee, Wisconsin 53202-5306.

5.

Defendant Janes LLC, is a Delaware limited liability company. It may be served with process through The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.

Jurisdiction is proper in this Court because each of the Defendants has, jointly and individually, done business in this State, reached into this State to do business, and injured a resident of this State. Accordingly, jurisdiction exists pursuant to the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91.

7.

Venue is proper in this Court as Defendant JP Morgan Chase & Co. maintains its registered agent in this County, and the Defendants are joint tortfeasors.

## RELEVANT FACTS

8.

The Defendants (except for Janes LLC) are, by the terms of the instrument or by their deliberate assumption of the office, Trustees of the 1967 Jane Brooks Holbrook Trust.

9.

Plaintiffs are the Beneficiaries of that same trust.

10.

The Defendants (except for Janes LLC) are, by the terms of the instruments or by their deliberate assumption of the office, Trustees of each individual alleged trust set up in the names of each of the Plaintiffs, all purported trusts allegedly created pursuant to the 1967 Jane Brooks Holbrook Trust.

11.

Plaintiffs are alleged Beneficiaries of those same trusts.

12.

Janes LLC is a Delaware limited liability company created and operated as their alter ego by the other Defendants, allegedly pursuant to the 1967 Jane Brooks Holbrook Trust.

13.

Plaintiffs have stated that the corpus of the 1967 Jane Brooks Holbrook Trust has decreased by fifty-seven percent (57%) in the last ten years.

14.

The terms of the 1967 Jane Brooks Holbrook Trust state that:

3

"When any such issue shall attain the age of (35) thirty five years, his trust shall terminate, and the Trustees shall pay over and distribute to him all of the property then held in his trust fund, including all accumulate and undistributed income thereof; provided, however, that the termination of any such trust fund may be postponed and deferred, in whole or in part, if and so long as the Trustees, in their sole and absolute discretion, shall deem such postponement, and deferment, wise, expedient and in the best interests of such issue and his family ... the donor recommends and directs that the Trustees terminate any such trust and distribute the property thereof only after having determined that such termination ... would be in the best interests of such issue and his family."

15.

Each Beneficiary is and has been over the age of 35 for over 8 years.

16.

Additionally, there is no spendthrift language in the trust documents.

17.

Each Plaintiff is *sui generis*, of right mind, competent to manage his own affairs, and otherwise not subject to any guardianship or other restriction on his capacity. Distribution of each Plaintiff's share of the trust would be in the best interests of each Plaintiff.

18.

Each Defendant has taken fees, totaling tens of thousands of dollars annually, from the Trust corpus over the last ten years and more.

19.

Plaintiffs have demanded amongst other items, an accounting of the books of the trusts, including but not limited to the corporate books of Janes LLC, and each individual alleged trust set up in the names of each of the Plaintiffs. A copy of the demand letter for the same is attached hereto as Exhibit A and incorporated by reference.

20.

Defendants have refused to produce the same to Plaintiffs after multiple request.

4

21.

As Beneficiaries of the 1967 Jane Brooks Holbrook Trust and the other alleged beneficiary named trusts, Plaintiffs are entitled to an accounting of the Trust and trusts. As members of Janes LLC and Plaintiffs are entitled to an accounting of the limited liability company by statute and by operating agreement.

## COUNT ONE – ACCOUNTING

22.

Plaintiffs re-incorporate and re-allege Paragraphs 1 through 22 as if fully stated herein.

23.

As Beneficiaries of the 1967 Jane Brooks Holbrook Trust; and as purported members of Janes LLC, and the other alleged beneficiary named trusts, Plaintiffs are entitled to an accounting of those entities and funds on reasonable notice and demand.

24.

Despite reasonable notice and demand, Defendants, despite their position as fiduciaries to Plaintiffs, have refused to provide an accounting to date.

25.

Defendants should be required to provide an accounting of those funds and entities, together with the other items prayed for in Exhibit A.

**WHEREFORE, THE PLAINTIFFS** pray for an accounting, and that Defendants be required to produce the items prayed for in Exhibit A hereto, together with such other and further belief as this Court deems just and proper.

Respectfully submitted, this, the 16th of May, 2011.

_____

Sam Katz Esq. Attorney for Plaintiffs
Georgia Bar #409058
5883 Glenridge Drive Suite 160, Atlanta, GA 30328

5

## CERTIFICATE OF SERVICE

I hereby certify that on May **16th**, 2011, I served a copy of the foregoing by United States Mail,

first class postage prepaid and addressed to the following:

F&L Corp., 777 E Wisconsin Ave., Ste. 3800, Milwaukee, Wisconsin 53202-5306

JP Morgan Chase & Co by its agent CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361

John F. Callan at 777 E. Wisconsin Avenue, Milwaukee, WI 53202-5306

John M. Phillips at 111 E. Wisconsin Avenue, 22nd Floor, Milwaukee, WI 53202

Michael P. Sessa at 111 E. Wisconsin Avenue, 22nd Floor, Milwaukee, WI 53202.

Janes LLC at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801

Sam Katz Esq.



**FCM**

U.S. POSTAGE
$6.43
FCM LG ENV
30338
0 lb 2.10 oz
05/16/11
02315589

**USPS® FIRST-CLASS MAIL®**

RETURN RECEIPT REQUESTED

SHIP
TO:

WILMINGTON DE 19801

**USPS® CERTIFIED MAIL™**

420 19801 9171 9690 0698 2059 0645 22

ZIP

KLF
Attorneys at Law
5803 Glenridge Drive
Suite 160
Atlanta, Georgia 30328

The Corporation Trust Company
Corporation Trust Center for
JANES LLC

1209 Orange St
Wilmington, DE 19801

 **CT Corporation**

**Service of Process Transmittal**
05/24/2011
CT Log Number 518564618

**TO:** Carol Gunther, Paraprofessional
Foley & Lardner LLP
777 East Wisconsin Avenue, Suite 3800
Milwaukee, WI 53202

**RE:** **Process Served in Delaware**

**FOR:** Janes LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Scott DeWind, et al., Pltfs. vs. JP Morgan Chase & Co., et al. including Janes LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Information, Summons, Complaint, Certificate of Service |
| **COURT/AGENCY:** | Fulton County State Court, GA<br>Case # 2011CV200617 |
| **NATURE OF ACTION:** | Plaintiffs are seeking an Accounting of the funds and entities related to the 1967 Jane Brooks Holbrook Trust |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/24/2011 postmarked on 05/16/2011 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Withing 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Sam Katz<br>5883 Glenridge Drive<br>Suite 160<br>Atlanta, GA 30328 |
| **REMARKS:** | Please note although the Complaint references an Exhibit A, there was no Exhibit received with the process. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/24/2011, Expected Purge Date: 05/29/2011<br>Image SOP<br>Email Notification, Carol Gunther CGUNTHER@FOLEY.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | The Corporation Trust Company<br>Scott LaScala<br>1209 Orange Street<br>Wilmington, DE 19801<br>302-658-7581 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**NORTH ANNEX**

## General Civil Case Filing Information Form (Non-Domestic)

‹ A C

| | | |
|---|---|---|
| **Court** | County _Fulton_ | Date Filed _05-16-2011_ |
| ☑ Superior | | MM-DD-YY |
| ☐ State | Docket # _2011CV200617_ | |

FILED IN OFFICE

MAY 16 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|---|---|---|---|---|---|
| De Wind | Scott | | | | |
| Fransue | Susan | | | | |
| Bennett | Lauri | | | | |
| Fransue | Michael | | | | |

Chasan, Janice & Holbrook, Bey
No. of Plaintiffs _6_   Holbrook, Gerald

**Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|---|---|---|---|---|---|
| JP Morgan Chase | | | | | |
| Foley & Lardner | | | | | |
| Phillps | John | | | | |
| Sessa | Michael | | | | |

Callan, John, Jones LLC
No. of Defendants _6_

---

**Plaintiff/Petitioner's Attorney**    ☐ Pro Se

| Katz | Sam | | |
|---|---|---|---|
| Last | First | Middle I. | Suffix |

Bar # _409058_

**Check Primary Type (Check only ONE)**

- ☐ Contract/Account
- ☐ Wills/Estate
- ☐ Real Property
- ☐ Dispossessory/Distress
- ☐ Personal Property
- ☐ Equity
- ☐ Habeas Corpus
- ☐ Appeals, Reviews
- ☐ Post Judgment Garnishment, Attachment, or Other Relief
- ☐ Non-Domestic Contempt
- ☐ Tort (If tort, fill in right column)
- ☑ Other General Civil Specify _Trusts_

**If Tort is Case Type:**
(Check no more than TWO)

- ☐ Auto Accident
- ☐ Premises Liability
- ☐ Medical Malpractice
- ☐ Other Professional Negligence
- ☐ Product Liability
- ☐ Other Specify _____

**Are Punitive Damages Pleaded?** ☐ Yes ☐ No

KAC



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

**136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303**

## SUMMONS

Scott DeWind, Susin Fransoe, Lauri F. Bennett, Jane Chasen, Gerald Hasbrook, Michael Fransoe, et al.
**Plaintiff,**

Case No.: 2011CV200617

vs.

JP Morgan Chase & Co. John F. Callan, John M. Phillips, Michael P. Sessa, Foly & Lardner LLP, Jones LLC
**Defendant**

TO THE ABOVE NAMED DEFENDANT(S):

Your are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____16TH_____ day of ___MAY___, 20_11_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By_____
Deputy Clerk

To defendant upon whom this petition is served:

This copy of complaint and summons was served upon you_____, 20_____

_____
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

J. Scott DeWind, Susan Fromsee, Laura F. Burnett,     Case No.: 2011cr200617
Tara O. Chason, Gerald Hollarook, John DeWind
Michael S. Fromsee as members of Janes, LLC,
*individually and* **Plaintiff, as shareholder Jones Corp.**
*as beneficiaries*
vs.    *under 1967 Jane Hollarook Trust*

JP Morgan Chase & Co., John Callen, Jana M. Phillips,
Michael P. Sessa, Foley & Lardner, LLP
Janes Corporation & Janes, LLC.
**Defendant**

TO THE ABOVE NAMED DEFENDANT(S):

Your are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

Sam Karz Esc.
5883 Glenridge Dr. St 160
Atlanta, GA 30328

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____29th_____ day of __August__, 20_11_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By_____
Deputy Clerk

To defendant upon whom this petition is served:

This copy of complaint and summons was served upon you_____, 20_____

_____
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used





FILED IN OFFICE

SEP. - 6 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

Scott DeWind, Susan Fronsoe, Laurie F.
Bennett, Jane D. Chason, Gerald M.
Holbrook and Michael S. Fronsoe
individually, as Members of Janes LLC,
and in their capacity as beneficiaries of
the 1967 Jane Brooks Holbrook Trust,
and other alleged trusts created by the
Defendants,

     Plaintiffs,

v.

JP Morgan Chase & Co., John F. Callan,
John M. Phillips, Michael P. Sessa,
Foley & Lardner, LLP, and Janes LLC,

     Defendants

Civil Action # 2011CV200617

## ANSWER OF JPMORGAN CHASE & CO.

Comes now JPMorgan Chase & Co., Defendant in the above-entitled

matter, by and through its counsel, and submits this special appearance denying

jurisdiction and sufficiency of service, and answering the Plaintiffs' Complaint

subject to the jurisdictional and service defenses as follows:

### FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of this action because it

is an *in rem* or *quasi in rem* proceeding that requires that the property in question

be within the territorial limits of the forum state. The property in question is not in

Georgia such that the Complaint should be dismissed.

SECOND DEFENSE

The Complaint should be dismissed for failure to state a claim against this Defendant.

THIRD DEFENSE

The Complaint should be dismissed for improper venue.

FOURTH DEFENSE

The Complaint should be dismissed for failure to join an indispensible party, namely the corporate Trustee of the trusts in question, JPMorgan Chase Bank, N.A.

FIFTH DEFENSE

Defendant pleads the affirmative defenses of accord and satisfaction, estoppel, laches, payment, release, statute of frauds, statute of limitations, the Wisconsin Principal and Income Act, waiver and prior allowance of accounts by the Circuit Court of Milwaukee County, Wisconsin.

SIXTH DEFENSE

Subject to and without waiving the jurisdictional defenses set forth above and in a motion to dismiss filed concurrently herewith, this Defendant answers the numbered paragraphs allegations of the Plaintiffs' Complaint as follows:

1.

The allegations of this paragraph require no response of this Defendant except that the consent of the Plaintiffs to the jurisdiction of this Court does

nothing to establish jurisdiction over the subject matter of this case or the person of this Defendant.

2.

This Defendant denies that JPMorgan Chase & Co. is a national banking association, but admits the remaining allegations of this paragraph.

3.

The allegations of this paragraph require no response of this Defendant.

4.

The allegations of this paragraph require no response of this Defendant.

5.

The allegations of this paragraph require no response of this Defendant.

6.

The allegations of paragraph 6 are denied.

7.

JPMorgan Chase & Co. admits that it has a registered agent in the State of Georgia. Otherwise, the allegations of paragraph 7 are denied. There are no torts alleged in the Complaint therefore this Defendant cannot be a joint tortfeasor with any other defendant. JPMorgan Chase & Co. is not the corporate trustee of the Trusts in question, owes Plaintiffs no duties with respect to the matters referred to in the Complaint and is not properly named as a defendant.

8.

The allegations of paragraph 8 are denied. This Defendant is not a Trustee and neither are Foley & Lardner, LLP, or Michael P. Sessa.

9.

No response to the allegations of paragraph 9 is required of this Defendant.

10.

The allegations of paragraph 10 are denied. This Defendant is not a Trustee and neither are Defendants Foley & Lardner, LLP and Michael P. Sessa.

11.

No response to the allegations of paragraph 11 is required of this Defendant.

12.

The allegations of paragraph 12 are denied except that this Defendant admits that Janes LLC is a Delaware limited liability company.

13.

This Defendant is without information sufficient to admit or deny the allegations of paragraph 13 concerning the Plaintiffs' statements regarding the corpus of the 1967 Jane Brooks Holbrook Trust.

14.

The terms of the 1967 Jane Brooks Holbrook Trust speak for themselves. This Defendant denies that the quoted language is quoted fairly or in context.

15.

The allegations of paragraph 15 are admitted.

16.

The allegations of paragraph 16 are denied.

17.

No response to the allegations of paragraph 17 is required of this Defendant.

18.

The allegations of paragraph 18 are denied.

19.

This Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 19.

20.

This Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations of paragraph 20.

21.

This Defendant denies that any Plaintiff herein is entitled to an accounting from this Defendant because this Defendant is not a Trustee of the trusts referred to in the Complaint. To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant lacks sufficient information to form a belief as to the veracity of the allegations of paragraph 21.

22.

The responses of the foregoing paragraphs are realleged and incorporated herein by reference.

23.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant lacks sufficient information to form a belief as to the veracity of the allegations of paragraph 21.

24.

The allegations of paragraph 24 are denied.

25.

This Defendant denies that Plaintiffs are entitled to a judicially supervised or enforced accounting in the Superior Court of Fulton County, Georgia because this Court lacks jurisdiction over the subject matter.

26.

Any allegation of the Complaint not heretofore responded to is hereby denied.

27.

Wherefore, having specially appeared and denied that this Court has jurisdiction over the subject matter, and having otherwise fully answered the Complaint, Defendant respectfully prays:

(a)     that the Complaint against it be dismissed and that it have judgment against the Plaintiffs;

(b)     that all costs of this action be taxed against the Plaintiffs; and

(c)     for such other and further relief as to the Court seems proper and just.

Respectfully submitted, this 6th day of September, 2011.

CALDWELL & WATSON, LLP

By: _____

Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget B. James
Georgia Bar No. 065014

Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing parties with a copy of this ANSWER OF JPMORGAN CHASE & CO. by U.S. First Class Mail with sufficient postage thereon to insure delivery, addressed to:

Samuel E. Katz, Esq.
The Katz Law Firm
5883 Glenridge Drive
Suite 160
Atlanta, Georgia 30328

This 6th day of September, 2011.

Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL & WATSON, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

COPY

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE

SEP - 6 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

Scott DeWind, Susan Fronsoe, Laurie F.
Bennett, Jane D. Chason, Gerald M.
Holbrook and Michael S. Fronsoe
individually, as Members of Janes LLC,
and in their capacity as beneficiaries of
the 1967 Jane Brooks Holbrook Trust,
and other alleged trusts created by the
Defendants,

Plaintiffs,

v.

JP Morgan Chase & Co., John F. Callan,
John M. Phillips, Michael P. Sessa,
Foley & Lardner, LLP, and Janes LLC,

Defendants

Civil Action # 2011CV200617

## ANSWER OF JOHN F. CALLAN

Comes now John F. Callan, Defendant in the above-entitled matter, by and

through his counsel, and submits this special appearance denying jurisdiction

and sufficiency of service, and answering the Plaintiffs' Complaint subject to the

jurisdictional and service defenses as follows:

### FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of this action because

it is an *in rem* or *quasi in rem* proceeding that requires that the property in

question be within the territorial limits of the forum state. The property in

question is not in Georgia such that the Complaint should be dismissed.

SECOND DEFENSE

The Court lacks jurisdiction over the person of this Defendant for the reason that he does not have sufficient contacts with the State of Georgia to permit Georgia courts to exercise personal jurisdiction over him consistent with the Due Process clause of the U.S. Constitution. He is not a resident of Georgia, transacts no business in Georgia, owns no property in Georgia, has not availed himself of the privilege of doing business in Georgia in any respect related to the claims asserted in the Complaint such that the Complaint should be dismissed against him for lack of personal jurisdiction.

THIRD DEFENSE

The Complaint should be dismissed for insufficiency of service on this Defendant.

FOURTH DEFENSE

The Complaint should be dismissed for failure to state a claim against this Defendant.

FIFTH DEFENSE

The Complaint should be dismissed for improper venue.

SIXTH DEFENSE

The Complaint should be dismissed for failure to join an indispensible party, namely the corporate Trustee of the trusts in question, JPMorgan Chase Bank, N.A.

SEVENTH DEFENSE

Defendant pleads the affirmative defenses of accord and satisfaction, estoppel, laches, payment, release, statute of frauds, statute of limitations, the Wisconsin Principal and Income Act, waiver and prior allowance of accounts by the Circuit Court of Milwaukee County, Wisconsin.

EIGHTH DEFENSE

Subject to and without waiving the jurisdictional and service defenses set forth above and in a motion to dismiss filed concurrently herewith, this Defendant answers the numbered paragraphs of the Plaintiffs' Complaint as follows:

1.

The allegations of this paragraph require no response of this Defendant except that the consent of the Plaintiffs to the jurisdiction of this Court does nothing to establish jurisdiction over the subject matter of this case or the person of this Defendant.

2.

The allegations of this paragraph require no response of this Defendant.

3.

This Defendant admits that he is a natural person and a resident of Wisconsin, and that the Defendants referred to in this paragraph may be reached at the addresses shown in this paragraph, but denies that he is subject to the jurisdiction or venue of this Court.

4.

The allegations of this paragraph require no response of this Defendant.

5.

The allegations of this paragraph require no response of this Defendant.

6.

The allegations of paragraph 6 are denied. A motion to dismiss for lack of personal jurisdiction is filed concurrently herewith.

7.

The allegations of paragraph 7 are denied. There are no torts alleged in the Complaint therefore this Defendant cannot be a joint tortfeasor with any other defendant. Further, JPMorgan Chase & Co. is not the corporate trustee of the Trusts in question.

8.

The allegations of paragraph 8 are denied. This Defendant is a Trustee of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust but Defendants JPMorgan Chase & Co., Michael P. Sessa and Foley & Lardner, LLP are not trustees of any of these trusts.

9.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust, as amended from time to time.

10.

The allegations of paragraph 10 are denied. This Defendant is a Trustee of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust but Defendants JPMorgan Chase & Co., Michael P. Sessa and Foley & Lardner, LLP are not trustees of any of these trusts.

11.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust, as amended from time to time.

12.

The allegations of paragraph 12 are denied except that this Defendant admits that Janes LLC is a Delaware limited liability company.

13.

This Defendant is without information sufficient to admit or deny the allegations of paragraph 13 concerning the Plaintiffs' statements regarding the corpus of the 1967 Jane Brooks Holbrook Trust.

14.

The terms of the 1967 Jane Brooks Holbrook Trust speak for themselves. This Defendant denies that the quoted language is quoted fairly or in context.

15.

The allegations of paragraph 15 are admitted.

16.

The allegations of paragraph 16 are denied.

17.

This defendant admits that Plaintiffs are sui generis, but denies that distribution of each Plaintiff's share would be in the best interests of each Plaintiff.

18.

The allegations of paragraph 18 are denied.

19.

This Defendant admits that Plaintiffs have asked for certain information, and shows that information was provided.

20.

The allegations of paragraph 20 are denied.

21.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

22.

The responses of the foregoing paragraphs are realleged and incorporated herein by reference.

23.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise this Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

24.

The allegations of paragraph 24 are denied.

25.

This Defendant denies that Plaintiffs are entitled to a judicially supervised or enforced accounting in the Superior Court of Fulton County, Georgia because this Court lacks jurisdiction over the subject matter and the person of Defendants.

26.

Any allegation of the Complaint not heretofore responded to is hereby denied.

27.

Wherefore, having specially appeared and denied that this Court has jurisdiction over the subject matter and denied that the Court has jurisdiction over his person, and having otherwise fully answered the Complaint, Defendant respectfully prays:

(a)   that the Complaint against him be dismissed and that he have judgment against the Plaintiffs;

(b)   that all costs of this action be taxed against the Plaintiffs; and

(c)   for such other and further relief as to the Court seems proper and just.

Respectfully submitted, this 6th day of September, 2011.

CALDWELL & WATSON, LLP

By: _____
Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget B. James
Georgia Bar No. 065014

Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

Attorneys for Defendants

8

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing

parties with a copy of this ANSWER OF JOHN F. CALLAN by U.S. First Class Mail

with sufficient postage thereon to insure delivery, addressed to:

> Samuel E. Katz, Esq.
> The Katz Law Firm
> 5883 Glenridge Drive
> Suite 160
> Atlanta, Georgia 30328

This 6th day of September, 2011.

Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL & WATSON, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

9



IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA



FILED IN OFFICE

SEP - 6 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | |
|---|---|
| Scott DeWind, Susan Fronsoe, Laurie F. Bennett, Jane D. Chason, Gerald M. Holbrook and Michael S. Fronsoe individually, as Members of Janes LLC, and in their capacity as beneficiaries of the 1967 Jane Brooks Holbrook Trust, and other alleged trusts created by the Defendants, | Civil Action # 2011CV200617 |
| Plaintiffs, | |
| v. | |
| JP Morgan Chase & Co., John F. Callan, John M. Phillips, Michael P. Sessa, Foley & Lardner, LLP, and Janes LLC, | |
| Defendants | |

## ANSWER OF JOHN M. PHILLIPS

Comes now John M. Phillips, Defendant in the above-entitled matter, by and through his counsel, and submits this special appearance denying jurisdiction and sufficiency of service, and answering the Plaintiffs' Complaint subject to the jurisdictional and service defenses as follows:

FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of this action because it is an *in rem* or *quasi in rem* proceeding that requires that the property in question be within the territorial limits of the forum state. Tthe property in question is not in Georgia such that the Complaint should be dismissed.

SECOND DEFENSE

The Court lacks jurisdiction over the person of this Defendant for the reason that he does not have sufficient contacts with the State of Georgia to permit Georgia courts to exercise personal jurisdiction over him consistent with the Due Process clause of the U.S. Constitution. He is not a resident of Georgia, transacts no business in Georgia, owns no property in Georgia, has not availed himself of the privilege of doing business in Georgia in any respect related to the claims asserted in the Complaint such that the Complaint should be dismissed against him for lack of personal jurisdiction.

THIRD DEFENSE

The Complaint should be dismissed for insufficiency of service on this Defendant.

FOURTH DEFENSE

The Complaint should be dismissed for failure to state a claim against this Defendant.

FIFTH DEFENSE

The Complaint should be dismissed for improper venue.

SIXTH DEFENSE

The Complaint should be dismissed for failure to join an indispensible party, namely the corporate Trustee of the trusts in question, JPMorgan Chase Bank, N.A.

SEVENTH DEFENSE

Defendant pleads the affirmative defenses of accord and satisfaction, estoppel, laches, payment, release, statute of frauds, statute of limitations, the Wisconsin Principal and Income Act, waiver and prior allowance of accounts by the Circuit Court of Milwaukee County, Wisconsin.

EIGHTH DEFENSE

Subject to and without waiving the jurisdictional and service defenses set forth above and in a motion to dismiss filed concurrently herewith, this Defendant answers the numbered paragraphs of the Plaintiffs' Complaint as follows:

1.

The allegations of this paragraph require no response of this Defendant except that the consent of the Plaintiffs to the jurisdiction of this Court does nothing to establish jurisdiction over the subject matter of this case or the person of this Defendant.

2.

The allegations of this paragraph require no response of this Defendant.

3.

This Defendant admits that he is a natural person and a resident of Wisconsin, and that the Defendants referred to in this paragraph may be reached at the addresses shown in this paragraph, but denies that he is subject to the jurisdiction or venue of this Court.

4.

The allegations of this paragraph require no response of this Defendant.

5.

The allegations of this paragraph require no response of this Defendant.

6.

The allegations of paragraph 6 are denied. A motion to dismiss for lack of personal jurisdiction is filed concurrently herewith.

7.

The allegations of paragraph 7 are denied. There are no torts alleged in the Complaint therefore this Defendant cannot be a joint tortfeasor with any other defendant. Further, JPMorgan Chase & Co. is not the corporate trustee of the Trusts in question.

8.

The allegations of paragraph 8 are denied. This Defendant is a Trustee of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust but Defendants JPMorgan Chase & Co., Michael P. Sessa and Foley & Lardner, LLP are not trustees of any of these trusts.

9.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust, as amended from time to time.

4

10.

The allegations of paragraph 10 are denied. This Defendant is a Trustee of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust but Defendants JPMorgan Chase & Co., Michael P. Sessa and Foley & Lardner, LLP are not trustees of any of these trusts.

11.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust, as amended from time to time.

12.

The allegations of paragraph 12 are denied except that this Defendant admits that Janes LLC is a Delaware limited liability company.

13.

This Defendant is without information sufficient to admit or deny the allegations of paragraph 13 concerning the Plaintiffs' statements regarding the corpus of the 1967 Jane Brooks Holbrook Trust.

14.

The terms of the 1967 Jane Brooks Holbrook Trust speak for themselves. This Defendant denies that the quoted language is quoted fairly or in context.

15.

The allegations of paragraph 15 are admitted.

16.

The allegations of paragraph 16 are denied.

17.

This defendant admits that Plaintiffs are sui generis, but denies that distribution of each Plaintiff's share would be in the best interests of each Plaintiff.

18.

The allegations of paragraph 18 are denied.

19.

This Defendant admits that Plaintiffs have asked for certain information, and shows that information was provided.

20.

The allegations of paragraph 20 are denied.

21.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, but not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

22.

The responses of the foregoing paragraphs are realleged and incorporated herein by reference.

23.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, but not in the Superior Court of Fulton County, Georgia. This Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

24.

The allegations of paragraph 24 are denied.

25.

This Defendant denies that Plaintiffs are entitled to a judicially supervised or enforced accounting in the Superior Court of Fulton County, Georgia because this Court lacks jurisdiction over the subject matter and the person of Defendants. Further, there was no Exhibit A attached to the Complaint, so the reference to Exhibit A in this paragraph has no meaning.

26.

Any allegation of the Complaint not heretofore responded to is hereby denied.

27.

Wherefore, having specially appeared and denied that this Court has jurisdiction over the subject matter and denied that the Court has jurisdiction over his person, and having otherwise fully answered the Complaint, Defendant respectfully prays:

    (a)    that the Complaint against him be dismissed and that he have judgment against the Plaintiffs;

    (b)    that all costs of this action be taxed against the Plaintiffs; and

    (c)    for such other and further relief as to the Court seems proper and just.

Respectfully submitted, this 6th day of September, 2011.

CALDWELL & WATSON, LLP

By: _____
Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget B. James
Georgia Bar No. 065014

Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing

parties with a copy of this ANSWER OF JOHN M. PHILLIPS by U.S. First Class Mail

with sufficient postage thereon to insure delivery, addressed to:

Samuel E. Katz, Esq.
The Katz Law Firm
5883 Glenridge Drive
Suite 160
Atlanta, Georgia 30328


This 6th day of September, 2011.

Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL & WATSON, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

COPY

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA



FILED IN OFFICE

SEP -6 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | |
|---|---|
| Scott DeWind, Susan Fronsoe, Laurie F. Bennett, Jane D. Chason, Gerald M. Holbrook and Michael S. Fronsoe individually, as Members of Janes LLC, and in their capacity as beneficiaries of the 1967 Jane Brooks Holbrook Trust, and other alleged trusts created by the Defendants,<br><br>    Plaintiffs,<br><br>v.<br><br>JP Morgan Chase & Co., John F. Callan, John M. Phillips, Michael P. Sessa, Foley & Lardner, LLP, and Janes LLC,<br><br>    Defendants | Civil Action # 2011CV200617 |

## ANSWER OF MICHAEL P. SESSA

Comes now Michael P. Sessa, Defendant in the above-entitled matter, by and through his counsel, and submits this special appearance denying jurisdiction and sufficiency of service, and answering the Plaintiffs' Complaint subject to the jurisdictional and service defenses as follows:

FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of this action because it is an *in rem* or *quasi in rem* proceeding that requires that the property in question be within the territorial limits of the forum state. The property in question is not in Georgia such that the Complaint should be dismissed.

### SECOND DEFENSE

The Court lacks jurisdiction over the person of this Defendant for the reason that he does not have sufficient contacts with the State of Georgia to permit Georgia courts to exercise personal jurisdiction over him consistent with the Due Process clause of the U.S. Constitution. He is not a resident of Georgia, transacts no business in Georgia, owns no property in Georgia, has not availed himself of the privilege of doing business in Georgia in any respect related to the claims asserted in the Complaint such that the Complaint should be dismissed against him for lack of personal jurisdiction.

### THIRD DEFENSE

The Complaint should be dismissed for insufficiency of service on this Defendant.

### FOURTH DEFENSE

The Complaint should be dismissed for failure to state a claim against this Defendant.

### FIFTH DEFENSE

The Complaint should be dismissed for improper venue.

### SIXTH DEFENSE

The Complaint should be dismissed for failure to join an indispensible party, namely the corporate Trustee of the trusts in question, JPMorgan Chase Bank, N.A.

SEVENTH DEFENSE

Defendant pleads the affirmative defenses of accord and satisfaction, estoppel, laches, payment, release, statute of frauds, statute of limitations, the Wisconsin Principal and Income Act, waiver and prior allowance of accounts by the Circuit Court of Milwaukee County, Wisconsin.

EIGHTH DEFENSE

Subject to and without waiving the jurisdictional and service defenses set forth above and in a motion to dismiss filed concurrently herewith, this Defendant answers the numbered paragraphs of the Plaintiffs' Complaint as follows:

1.

The allegations of this paragraph require no response of this Defendant except that the consent of the Plaintiffs to the jurisdiction of this Court does nothing to establish jurisdiction over the subject matter of this case or the person of this Defendant.

2.

The allegations of this paragraph require no response of this Defendant.

3.

This Defendant admits that he is a natural person and a resident of Wisconsin, and that the Defendants referred to in this paragraph may be reached at the addresses shown in this paragraph, but denies that he is subject to the jurisdiction or venue of this Court.

4.

The allegations of this paragraph require no response of this Defendant.

5.

The allegations of this paragraph require no response of this Defendant.

6.

The allegations of paragraph 6 are denied. A motion to dismiss for lack of personal jurisdiction is filed concurrently herewith.

7.

The allegations of paragraph 7 are denied. There are no torts alleged in the Complaint therefore this Defendant cannot be a joint tortfeasor with any other defendant. Further, JPMorgan Chase & Co. is not the corporate trustee of the Trusts in question.

8.

The allegations of paragraph 8 are denied. This Defendant is not a trustee, he is an employee of the corporate fiduciary, JPMorgan Chase Bank, N.A. (which is not a party to this case). Otherwise, this Defendant admits that various individual subtrusts for the grandchildren of Jane Brooks Holbrook were set up pursuant to the terms of the 1967 Jane Brooks Holbrook Trust.

9.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust, as amended from time to time.

10.

The allegations of paragraph 10 are denied. This Defendant is not a trustee, he is an employee of the corporate fiduciary, JPMorgan Chase Bank, N.A. (which is not a party to this case). Otherwise, this Defendant admits that various individual subtrusts for the grandchildren of Jane Brooks Holbrook were set up pursuant to the terms of the 1967 Jane Brooks Holbrook Trust.

11.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust, as amended from time to time.

12.

The allegations of paragraph 12 are denied except that this Defendant admits that Janes LLC is a Delaware limited liability company.

13.

This Defendant is without information sufficient to admit or deny the allegations of paragraph 13 concerning the Plaintiffs' statements regarding the corpus of the 1967 Jane Brooks Holbrook Trust.

14.

The terms of the 1967 Jane Brooks Holbrook Trust speak for themselves. This Defendant denies that the quoted language is quoted fairly or in context.

15.

The allegations of paragraph 15 are admitted.

16.

The allegations of paragraph 16 are denied.

17.

This defendant admits that Plaintiffs are sui generis, but denies that distribution of each Plaintiff's share would be in the best interests of each Plaintiff.

18.

The allegations of paragraph 18 are denied.

19.

This Defendant admits that Plaintiffs have asked for certain information, and shows that information was provided.

20.

The allegations of paragraph 20 are denied.

21.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

6

22.

The responses of the foregoing paragraphs are realleged and incorporated herein by reference.

23.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and  not in the Superior Court of Fulton County, Georgia. This Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

24.

The allegations of paragraph 24 are denied.

25.

This Defendant denies that Plaintiffs are entitled to a judicially supervised or enforced accounting in the Superior Court of Fulton County, Georgia because this Court lacks jurisdiction over the subject matter and the person of Defendants.

26.

Any allegation of the Complaint not heretofore responded to is hereby denied.

27.

Wherefore, having specially appeared and denied that this Court has jurisdiction over the subject matter and denied that the Court has jurisdiction over his person, and having otherwise fully answered the Complaint, Defendant respectfully prays:

(a)     that the Complaint against him be dismissed and that he have judgment against the Plaintiffs;

(b)     that all costs of this action be taxed against the Plaintiffs; and

(c)     for such other and further relief as to the Court seems proper and just.

Respectfully submitted, this 6th day of September, 2011.

CALDWELL & WATSON, LLP

By: _____
Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget B. James
Georgia Bar No. 065014

Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing

parties with a copy of this ANSWER OF MICHAEL P. SESSA by U.S. First Class Mail

with sufficient postage thereon to insure delivery, addressed to:

> Samuel E. Katz, Esq.
> The Katz Law Firm
> 5883 Glenridge Drive
> Suite 160
> Atlanta, Georgia 30328

This 6th day of September, 2011.

Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL & WATSON, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

9





FILED IN OFFICE

SEP - 6 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

Scott DeWind, Susan Fronsoe, Laurie F.
Bennett, Jane D. Chason, Gerald M.
Holbrook and Michael S. Fronsoe
individually, as Members of Janes LLC,
and in their capacity as beneficiaries of
the 1967 Jane Brooks Holbrook Trust,
and other alleged trusts created by the
Defendants,

     Plaintiffs,

v.

JP Morgan Chase & Co., John F. Callan,
John M. Phillips, Michael P. Sessa,
Foley & Lardner, LLP, and Janes LLC,

     Defendants

Civil Action # 2011CV200617

## ANSWER OF FOLEY & LARDNER, LLP

Comes now Foley & Lardner, LLP, Defendant in the above-entitled

matter, by and through its counsel, and submits this special appearance denying

jurisdiction and sufficiency of service, and answering the Plaintiffs' Complaint

subject to the jurisdictional and service defenses as follows:

### FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of this action because

it is an *in rem* or *quasi in rem* proceeding that requires that the property in

question be within the territorial limits of the forum state. The property in

question is not in Georgia such that the Complaint should be dismissed.

SECOND DEFENSE

The Court lacks jurisdiction over the person of this Defendant for the reason that it does not have sufficient contacts with the State of Georgia to permit Georgia courts to exercise personal jurisdiction over it consistent with the Due Process clause of the U.S. Constitution. It is not a resident of Georgia, has no offices or lawyers in Georgia, owns no property in Georgia, has not availed itself of the privilege of doing business in Georgia in any respect related to the claims asserted in the Complaint such that the Complaint should be dismissed against it for lack of personal jurisdiction.

THIRD DEFENSE

The Complaint should be dismissed for insufficiency of service on this Defendant.

FOURTH DEFENSE

The Complaint should be dismissed for failure to state a claim against this Defendant.

FIFTH DEFENSE

The Complaint should be dismissed for improper venue.

SIXTH DEFENSE

The Complaint should be dismissed for failure to join an indispensible party, namely the corporate Trustee of the trusts in question, JPMorgan Chase Bank, N.A.

SEVENTH DEFENSE

Defendant pleads the affirmative defenses of accord and satisfaction, estoppel, laches, payment, release, statute of frauds, statute of limitations, the Wisconsin Principal and Income Act, waiver and prior allowance of accounts by the Circuit Court of Milwaukee County, Wisconsin.

EIGHTH DEFENSE

Subject to and without waiving the jurisdictional and service defenses set forth above and in a motion to dismiss filed concurrently herewith, this Defendant answers the numbered paragraphs of the Plaintiffs' Complaint as follows:

1.

The allegations of this paragraph require no response of this Defendant except that the consent of the Plaintiffs to the jurisdiction of this Court does nothing to establish jurisdiction over the subject matter of this case or the person of this Defendant.

2.

The allegations of this paragraph require no response of this Defendant.

3.

The allegations of this paragraph require no response of this Defendant.

4.

Foley & Lardner LLP admits that it is a law firm with its practice in several states, but denies it is subject to the personal jurisdiction of this Court.

Foley & Lardner, LLP admits that its registered agent in Wisconsin is F&L Corp., but denies that process in a Georgia Superior Court case may be properly served by regular mail upon its registered agent in Wisconsin.

<center>5.</center>

The allegations of this paragraph require no response of this Defendant.

<center>6.</center>

The allegations of paragraph 6 are denied. A motion to dismiss for lack of personal jurisdiction is filed concurrently herewith.

<center>7.</center>

The allegations of paragraph 7 are denied. There are no torts alleged in the Complaint therefore this Defendant cannot be a joint tortfeasor with any other defendant. Further, JPMorgan Chase & Co. is not the corporate trustee of the Trusts in question.

<center>8.</center>

The allegations of paragraph 8 are denied. This Defendant is not a Trustee and neither are JPMorgan Chase & Co., or Michael P. Sessa. Otherwise, this Defendant admits that various individual subtrusts for the grandchildren of Jane Brooks Holbrook were set up pursuant to the terms of the 1967 Jane Brooks Holbrook Trust.

<center>9.</center>

No response to the allegations of paragraph 9 is required of this Defendant.

<center>4</center>

10.

The allegations of paragraph 10 are denied. This Defendant is not a Trustee and neither are Defendants JPMorgan Chase & Co. and Michael P. Sessa. Otherwise, this Defendant admits that various individual subtrusts for the grandchildren of Jane Brooks Holbrook were set up pursuant to the terms of the 1967 Jane Brooks Holbrook Trust.

11.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust.

12.

The allegations of paragraph 12 are denied except that this Defendant admits that Janes LLC is a Delaware limited liability company.

13.

This Defendant is without information sufficient to admit or deny the allegations of paragraph 13 concerning the Plaintiffs' statements regarding the corpus of the 1967 Jane Brooks Holbrook Trust.

14.

The terms of the 1967 Jane Brooks Holbrook Trust speak for themselves. This Defendant denies that the quoted language is quoted fairly or in context.

15.

The allegations of paragraph 15 are admitted.

16.

The allegations of paragraph 16 are denied.

17.

No response to the allegations of paragraph 17 is required of this Defendant.

18.

The allegations of paragraph 18 are denied.

19.

This Defendant admits that Plaintiffs have asked for certain information, and shows that information was provided.

20.

The allegations of paragraph 20 are denied.

21.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

22.

The responses of the foregoing paragraphs are realleged and incorporated herein by reference.

23.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. This Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

24.

The allegations of paragraph 24 are denied.

25.

This Defendant denies that Plaintiffs are entitled to a judicially supervised or enforced accounting in the Superior Court of Fulton County, Georgia because this Court lacks jurisdiction over the subject matter and the person of Defendants.

26.

Any allegation of the Complaint not heretofore responded to is hereby denied.

27.

Wherefore, having specially appeared and denied that this Court has jurisdiction over the subject matter and denied that the Court has jurisdiction over his person, and having otherwise fully answered the Complaint, Defendant respectfully prays:

7

(a)     that the Complaint against it be dismissed and that it have

judgment against the Plaintiffs;

(b)     that all costs of this action be taxed against the Plaintiffs; and

(c)     for such other and further relief as to the Court seems proper and

just.

Respectfully submitted, this 6th day of September, 2011.


CALDWELL & WATSON, LLP


By:_____
Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget B. James
Georgia Bar No. 065014


Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing

parties with a copy of this ANSWER OF FOLEY & LARDNER, LLP by U.S. First Class

Mail with sufficient postage thereon to insure delivery, addressed to:

> Samuel E. Katz, Esq.
> The Katz Law Firm
> 5883 Glenridge Drive
> Suite 160
> Atlanta, Georgia 30328

This 6th day of September, 2011.

Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL & WATSON, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

9



IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA



FILED IN OFFICE

SEP - 6 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | |
|---|---|
| Scott DeWind, Susan Fronsoe, Laurie F. Bennett, Jane D. Chason, Gerald M. Holbrook and Michael S. Fronsoe individually, as Members of Janes LLC, and in their capacity as beneficiaries of the 1967 Jane Brooks Holbrook Trust, and other alleged trusts created by the Defendants, | Civil Action # 2011CV200617 |
| Plaintiffs, | |
| v. | |
| JP Morgan Chase & Co., John F. Callan, John M. Phillips, Michael P. Sessa, Foley & Lardner, LLP, and Janes LLC, | |
| Defendants | |

## ANSWER OF JANES LLC

Comes now Janes LLC, Defendant in the above-entitled matter, by and through its counsel, and submits this special appearance denying jurisdiction and sufficiency of service, and answering the Plaintiffs' Complaint subject to the jurisdictional and service defenses as follows:

### FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of this action because it is an *in rem* or *quasi in rem* proceeding that requires that the property in question be within the territorial limits of the forum state. The property in question is not in Georgia such that the Complaint should be dismissed.

SECOND DEFENSE

The Court lacks jurisdiction over the person of this Defendant for the reason that it does not have sufficient contacts with the State of Georgia to permit Georgia courts to exercise personal jurisdiction over it consistent with the Due Process clause of the U.S. Constitution. Janes LLC is not a resident of Georgia, transacts no business in Georgia, owns no property in Georgia, has not availed itself of the privilege of doing business in Georgia in any respect related to the claims asserted in the Complaint such that the Complaint should be dismissed against it for lack of personal jurisdiction.

THIRD DEFENSE

The Complaint should be dismissed for insufficiency of service on this Defendant.

FOURTH DEFENSE

The Complaint should be dismissed for failure to state a claim against this Defendant.

FIFTH DEFENSE

The Complaint should be dismissed for improper venue.

SIXTH DEFENSE

The Complaint should be dismissed for failure to join an indispensible party, namely the corporate Trustee of the trusts in question, JPMorgan Chase Bank, N.A.

SEVENTH DEFENSE

Defendant pleads the affirmative defenses of accord and satisfaction, estoppel, laches, payment, release, statute of frauds, statute of limitations, the Wisconsin Principal and Income Act, waiver and prior allowance of accounts by the Circuit Court of Milwaukee County, Wisconsin.

EIGHTH DEFENSE

Subject to and without waiving the jurisdictional and service defenses set forth above and in a motion to dismiss filed concurrently herewith, this Defendant answers the numbered paragraphs of the Plaintiffs' Complaint as follows:

1.

The allegations of this paragraph require no response of this Defendant except that the consent of the Plaintiffs to the jurisdiction of this Court does nothing to establish jurisdiction over the subject matter of this case or the person of this Defendant.

2.

The allegations of this paragraph require no response of this Defendant.

3.

The allegations of this paragraph require no response of this Defendant.

4.

The allegations of this paragraph require no response of this Defendant.

5.

Janes LLC admits that it is a Delaware limited liability company but denies that proper service may be effected upon it in the manner employed by Plaintiffs, and specifically contends that service in this case upon its registered agent in Delaware by certified mail is insufficient and entitles it to a dismissal pursuant to O.C.G.A. § 9-11-12(b)(5) for insufficiency of service of process. A motion to dismiss on this ground is filed concurrently herewith.

6.

The allegations of paragraph 6 are denied. A motion to dismiss for lack of personal jurisdiction is filed concurrently herewith.

7.

The allegations of paragraph 7 are denied. There are no torts alleged in the Complaint therefore this Defendant cannot be a joint tortfeasor with any other defendant. Further, JPMorgan Chase & Co. is not the corporate trustee of the Trusts in question.

8.

The allegations of paragraph 8 are denied. This Defendant is not a Trustee and neither are JPMorgan Chase & Co., Foley & Lardner, LLP or Michael P. Sessa.

9.

No response to the allegations of paragraph 9 is required of this Defendant.

10.

The allegations of paragraph 10 are denied. This Defendant is not a Trustee and neither are Defendants JPMorgan Chase & Co. and Michael P. Sessa. Otherwise, this Defendant admits that various individual subtrusts for the grandchildren of Jane Brooks Holbrook were set up pursuant to the terms of the 1967 Jane Brooks Holbrook Trust.

11.

This Defendant admits that Plaintiffs are beneficiaries of various subtrusts established under the terms of the 1967 Jane Brooks Holbrook Trust.

12.

The allegations of paragraph 12 are denied except that this Defendant admits that Janes LLC is a Delaware limited liability company.

13.

This Defendant is without information sufficient to admit or deny the allegations of paragraph 13 concerning the Plaintiffs' statements regarding the corpus of the 1967 Jane Brooks Holbrook Trust.

14.

The terms of the 1967 Jane Brooks Holbrook Trust speak for themselves. This Defendant denies that the quoted language is quoted fairly or in context.

15.

The allegations of paragraph 15 are admitted.

16.

The allegations of paragraph 16 are denied.

17.

No response to the allegations of paragraph 17 is required of this Defendant.

18.

The allegations of paragraph 18 are denied.

19.

This Defendant admits that Plaintiffs have asked for certain information, and shows that information was provided.

20.

The allegations of paragraph 20 are denied.

21.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. Otherwise, this Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

22.

The responses of the foregoing paragraphs are realleged and incorporated herein by reference.

23.

To the extent that Plaintiffs are entitled to an accounting it is in the Circuit Court of Milwaukee County, Wisconsin, and not in the Superior Court of Fulton County, Georgia. This Defendant denies that Plaintiffs are entitled to an accounting of Janes LLC in any court because individually they no longer own any interest in the company. To the extent that any further response to this paragraph is required it is denied.

24.

The allegations of paragraph 24 are denied.

25.

This Defendant denies that Plaintiffs are entitled to a judicially supervised or enforced accounting in the Superior Court of Fulton County, Georgia because this Court lacks jurisdiction over the subject matter and the person of Defendants.

26.

Any allegation of the Complaint not heretofore responded to is hereby denied.

27.

Wherefore, having specially appeared and denied that this Court has jurisdiction over the subject matter and denied that the Court has jurisdiction over its person, and having moved simultaneously to dismiss the Complaint, and having otherwise fully answered the Complaint, Defendant respectfully prays:

7

(a)      that the Complaint against it be dismissed and that it have judgment against the Plaintiffs;

(b)      that all costs of this action be taxed against the Plaintiffs; and

(c)      for such other and further relief as to the Court seems proper and just.

Respectfully submitted, this 6th day of September, 2011.

CALDWELL & WATSON, LLP

By:_____

Floyd E. Propst
Georgia Bar No. 588600
Harry W. MacDougald
Georgia Bar No. 463076
Bridget B. James
Georgia Bar No. 065014

Two Ravinia Drive
Suite 1600
Atlanta, Georgia  30346
(404) 843-1956

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing parties with a copy of this ANSWER OF JANES LLC by U.S. First Class Mail with sufficient postage thereon to insure delivery, addressed to:

> Samuel E. Katz, Esq.
> The Katz Law Firm
> 5883 Glenridge Drive
> Suite 160
> Atlanta, Georgia 30328

This 6th day of September, 2011.

Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL & WATSON, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
(404) 843-1956

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

J. Scott DeWind, Susan Fronsoe,           ]
Laura F. Bennett, Jane D. Chason,         ]
Gerald M. "Bey" Holbrook,                 ]
and Michael S. Fronsoe,                   ]
individually, as Members of Janes LLC     ]
and Shareholders of Janes Corporation,    ]
and in their capacities as beneficiaries of ]
the 1967 Jane Brooks Holbrook Trust,      ]
and other alleged trusts created          ]
by the Defendants,                        ]
                                          ]
*Plaintiffs,*                             ]     Civil Action # __Z ⁶¹¹ ⲥⲟ Ⲍⲟⲟ Ꮿ¹7__
                                          ]
                                          ]
v.                                        ]
                                          ]
JP Morgan Chase & Co., John F. Callan,    ]
John M. Phillips, Michael P. Sessa,       ]
Foley & Lardner, LLP,                     ]
Janes Corporation, and Janes LLC,         ]
                                          ]
*Defendants.*                             ]



**FILED IN OFFICE**

AUG 29 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## AMENDED COMPLAINT AND PRAYER FOR INJUNCTIVE RELIEF

COME NOW THE PLAINTIFFS, Scott Dewind, Susan Fronsoe, Laura F. Bennett, Jane D. Chason, Gerald M. Holbrook, John DeWind, and Michael S. Fronsoe individually, as Members of Janes LLC and shareholders of Janes Corporation, and in their capacity as beneficiaries of the 1967 Jane Brooks Holbrook Trust and certain other alleged trusts (collectively, "Plaintiffs" or "Beneficiaries"), and file this, their Amended Complaint and Prayer for Injunctive Relief against JP Morgan Chase & Co. (in its own right and as successor to

1

BankOne, N.A., collectively known as "JPMorgan"), John F. Callan ("Callan"), John M. Phillips ("Phillips"), Michael P. Sessa ("Sessa"), Foley & Lardner, LLP ("Foley"), Janes Corporation, and Janes LLC, and respectfully show as follows:

1.

Plaintiffs are citizens of several states, including Georgia, Florida, and Colorado, and have at various times been citizens of several other states, including California, and consent and submit to this Court's jurisdiction.

2.

Defendant JP Morgan Chase & Co. is a national banking association, a foreign corporation registered with the Secretary of State to do business in Georgia. It may be served with process through its registered agent, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361. Though not named as Defendants, Brian Bialek, Nathan Tiziani, Elizabeth Baldwin, Amy Buelow, and JP Morgan Wealth Management Services either are wholly owned subsidiaries of or work for Defendant JP Morgan Chase & Co.

3.

Defendants John F. Callan, John M. Phillips, and Michael P. Sessa are natural persons, and residents of the State of Wisconsin. Process may be served upon John F. Callan at 777 E. Wisconsin Avenue, Milwaukee, WI 53202-5306. Process may be served upon John M. Phillips at 111 E. Wisconsin Avenue, 22nd Floor, Milwaukee, WI 53202. Process may be served upon Michael P. Sessa at 111 E. Wisconsin Avenue, 22nd Floor, Milwaukee, WI 53202.

4.

Defendant Foley & Lardner, LLP, is a law firm with its practice in several states. Its primary office is in Wisconsin, and it may be served with process through its registered agent, Foley & Lardner Corp., 777 E. Wisconsin Ave., Ste. 3800, Milwaukee, Wisconsin 53202-5306. Sandra L. Gnerlich is and at all relevant times hereto was either an attorney or paralegal employed by Foley & Lardner, LLP.

5.

Defendant Janes LLC is a Delaware limited liability company. It may be served with process through The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Janes LLC is the corporate successor to Defendant Janes Corporation, a nominally dissolved Delaware Corporation, upon which process may be had at the same registered agent.

6.

Jurisdiction is proper in this Court because each of the Defendants has, jointly and individually, done business in this State; reached into this State to do business; and reached into this State in order to injure a resident of this State. Accordingly, jurisdiction exists pursuant to the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91. Furthermore, as the Defendants acted as part of a single, overarching conspiracy through a corrupt enterprise, coordinating their individual efforts to act as a unitary whole; and as Defendant JP Morgan Chase & Co., as one

3

of the conspirators, is registered to do business in this State, Defendants have jointly submitted themselves to this Court's jurisdiction.

<div align="center">7.</div>

Venue is proper in this Court as Defendant JP Morgan Chase & Co. maintains its registered agent in this County, and the Defendants are joint tortfeasors.

<div align="center">RELEVANT FACTS</div>

<div align="center">8.</div>

The Defendants (except for Janes LLC and Janes Corporation) are, by the terms of the instrument and/or by their deliberate assumption of the office, Trustees of the 1967 Jane Brooks Holbrook Trust (the "Trust"), a trust established in 1967 by Jane Brooks Holbrook for the benefit of her children and grandchildren. The Defendants (except for Janes LLC and Janes Corporation) are or were officers or managers of Janes LLC and Janes Corporation, or substantially directed and controlled the same, as the vehicles nominally created to maintain and advance the Trust.

<div align="center">9.</div>

Plaintiffs are the Beneficiaries of that same trust.

<div align="center">10.</div>

The Defendants (except for Janes LLC and Janes Corporation) are, by the terms of the instruments and/or by their deliberate assumption of the office, Trustees of each individual, alleged trust set up in the names of each of the

<div align="center">4</div>

Plaintiffs, all of which the Defendants allegedly created pursuant to the 1967 Jane Brooks Holbrook Trust.

<center>11.</center>

Plaintiffs are alleged Beneficiaries of those same trusts. Defendants have never provided copies of the documents creating those trusts to the trusts' alleged beneficiaries.

<center>12.</center>

Janes LLC is a Delaware limited liability company created and operated as the alter ego and unlawful enterprise by the other Defendants, allegedly pursuant to the 1967 Jane Brooks Holbrook Trust. Janes LLC is the successor to Janes Corporation, the prior enterprise, alter ego, and vehicle for Defendants' conspiracy to defraud the Trust and the beneficiaries of their inheritance. All of the Plaintiffs were members or shareholder or owners of an interest in both Janes LLC and Janes Corporation.

<center>13.</center>

In 1967, Jane Brooks Holbrook established a trust for the benefit of her children and grandchildren. Although she did not know it at the time, her trust would become a vehicle for self-dealing and reckless mismanagement and neglect by the Trustees she chose and their successors.

<center>5</center>

14.

The trust was to survive her children and disburse to her grandchildren after the last surviving grandchild reached the age of thirty-five. (A copy of the Trust Agreement is attached hereto as Exhibit "A" and is incorporated herein by reference.)

15.

More specifically, the terms of the 1967 Jane Brooks Holbrook Trust state that:

> "[when] any such issue shall attain the age of (35) thirty five years, his trust shall terminate, and the Trustees shall pay over and distribute to him all of the property then held in his trust fund, including all accumulate and undistributed income thereof; provided, however, that the termination of any such trust fund may be postponed and deferred, in whole or in part, if and so long as the Trustees, in their sole and absolute discretion, shall deem such postponement, and deferment, wise, expedient and in the best interests of such issue and his family ... the donor recommends and directs that the Trustees terminate any such trust and distribute the property thereof only after having determined that such termination ... would be in the best interests of such issue and his family."

16.

The Trust Agreement was subsequently amended in 1973. A copy of that amendment is attached hereto as Exhibit "B" and incorporated herein by reference.

17.

Jane Brooks Holbrook chose her family lawyer, Allen M. Taylor of Foley & Lardner, as a trustee, and included John Cockle of Marine National Bank, as another trustee. The Trustees set up Janes Corporation as the vehicle for the Trust.

18.

For the next three decades, the Trust, under the management of a company called Strategic Asset Management, slowly but steadily increased in value, rising to a peak of over $11,000,000 in 2000. The Trust paid annual dividends to Jane Brooks Holbrook's children as her grandchildren came of age. Over time, Jack Porter and John Callan became the Trustees of the Trust.

19.

However, by maintaining the Janes Corporation vehicle for decades, the Trustees subjected the Trust corpus to what they would themselves describe, in an email dated August 11, 2010, as a "very disfavored tax treatment." The net effect was to eliminate the ability of the Trust to build gains over time for the future generations the Trustees claimed they were protecting.

20.

In 1996, when the Trust's value stood at nearly $8,000,000, the Trustees took on BankOne as investment advisor for the first time based on the recommendations and approval of the Trustees. John M. Phillips of BankOne became a Trustee for the trusts.  The Beneficiaries were told by the Trustees that they needed to hire BankOne as BankOne could help them diversify better than anyone else, BankOne

7

had access to opportunities that others did not, and because BankOne claimed that their fees were lower than anyone else's. The Beneficiaries relied on the statements of the Trustees as their fiduciaries, and agreed to allow the Trust to invest in BankOne funds and to hire BankOne as an investment advisor, resulting in a loss of over $6,000,000.00 – and enormous amounts of lost profit besides – during the time the Trust was under management by the Defendants.

21.

Every year thereafter, Foley & Lardner and BankOne took fees from the Trust for their time acting as Trustees, and for legal representation and investment advice. On information and belief, Foley & Lardner represented BankOne as counsel at all relevant times in a host of other matters.

22.

At all relevant times prior to the Trust's portfolio being managed by BankOne, the Trust's portfolio was heavily diversified, with holdings in blue chip stocks and mixed asset classes, including real estate and money market funds. Once the Trust's portfolio came under BankOne's management, it became heavily invested in BankOne mutual funds.

23.

In 2001 and early 2002, with the general decline in all asset values, the Trust lost approximately $4,000,000. It would never return to its 2000 level, despite the massive appreciation in all asset classes from mid-2002 through December 2007. Foley & Lardner and BankOne (which later became JPMorgan Chase) continued to

8

take fees from the Trust for their time acting as Trustees, and for legal representation and investment advice.

<center>24.</center>

In 2003, the last surviving grandchild to turn 35 did so. At this time, the Beneficiaries reviewed the booklets they were given, to help them understand what they were gifted. At this time, J. Scott DeWind and others began asking questions concerning the Trust, how it was managed, how fees were charged, what fees were charged, a breakdown of fees, how the portfolio was controlled, why the Trust was investing in so many BankOne/JPMorgan mutual funds, and why certain events were occurring or not. These questions were never fully answered, and when they were answered, the answers were evasive or misleading. In fact, the Trustees held onto as much money as possible as their companies derived substantial fees based on the size of the assets under management.

<center>25.</center>

Thus, the Defendants were charging 2% (until receipt of Plaintiff's demand letter, whereby the rate was lowered) of the total funds under management, for an account with less than $4,000,000 as a result of their mismanagement, an amount in excess of standard industry practice, to this day.

<center>26.</center>

As an additional example, in 2010 the Defendants charged Susan Fronsoe and Laura Bennett fees on their K-1 of $6,946.00 and $7,635.00, respectively, and totaling $81,071.93 and $80,751.78.

<center>9</center>

27.

The Trustees have zealously guarded this state of affairs for years. For example, at the Janes Corporation Board of Directors Meeting on November 28, 2006, J. Scott DeWind asked whether the Board should be concerned about the fact that many of the mutual funds in the portfolio were JPMorgan mutual funds. The Trustees responded that they would "not hesitate to get out of them if they were not outperforming their benchmarks." (Exhibit "C") Jim Korgmeier added that it would be less expensive for Janes Corporation to use JPMorgan mutual funds than it is to use a third party mutual funds. The Plaintiffs reasonably relied on their fiduciaries' representations that JPMorgan was a good advisor for the Trust, and that there was no significant conflict in its representation. Thus, even though JPMorgan never even met market benchmarks, the Trustees left all funds with JPMorgan.

28.

The Trustees continued to milk fees from the Trust over time, while generally disregarding the stated goals of increasing the size and profitability of the Trust in so doing. Moreover, the Trustees ignored their duties of good faith and transparency, duties they themselves recognized. For example, in an email from James Krogmeier on February 28, 2007, stating that he was no longer working with Janes Corporation and would be replaced by Mike Sessa, Krogmeier states that:

> "Mike is an attorney who practiced for several years before joining the bank. Mike has also assisted both me and John Phillips with Janes Corp. matter behind the scenes and is familiar with the family and the different legal entities involved." (Exhibit "D").

JPMorgan therefore turned over the Trust's management – at a time of increasingly fast economic collapse – to an attorney without a Series 7 license, as the licensed financial advisor was sent elsewhere. That the Trustees had involved yet another attorney – for whose time the Trust was apparently billed – in the management of the Trust, without informing the Plaintiffs, simply underlines the extent to which the Trustees managed the Trust as their own gold mine, without regard to the needs and concerns of the Plaintiffs.

<div align="center">29.</div>

Further, in an email dated January 19, 2007, James J. Krogmeier of JPMorgan responds to a question regarding the best interest of the beneficiaries. He responds with:

> "The shares in Mary's trusts are controlled by JP Morgan, John Callan, and John Phillips. You are right that she is generally not included in corporate actions. We have done nothing wrong in the last 8 years. The reason I feel this situation is different is because as trustees of her trust we need to make sure that the action of Janes Corp. are in the best interest as well as the interest of the beneficiaries of all the other trusts involved. Generally the interests of all the family members are aligned and there is no need to consult Mary. However, making a loan without collateral to someone who cannot otherwise obtain financing does not seem like a prudent thing to do; I am much more comfortable taking such an action if all the trust beneficiaries consent, including Mary in this case." (Exhibit "E").

<div align="center">30.</div>

The Trustees therefore admitted that Mary Holbrook was left out of discussions and decisions regarding her money. Furthermore, despite clear investment guidelines the Trustees – and the relevant States – had adopted, the

<div align="center">11</div>

Trustees admitted that they were treating the Plaintiff's interests (and therefore places in life) identically.

31.

Further, on November 28, 2006, the board meeting minutes of Janes Corporation show:

> "Scott Dewind asked whether the Board should be concerned about the fact that the JP Morgan mutual funds in the portfolio are JP Morgan mutual funds. Joel responded that the JP Morgan funds have performed well, outperforming their benchmarks, and that he would not hesitate to get out of them if they begin to underperform. Jim Krogmeierer added that it is less expensive for the Corporation to use JP Morgan mutual funds than it is to use a third party's mutual funds." (Exhibit "C").

By this time, the Trust had failed for five years running to match the general asset appreciation every relevant market index showed – whether in stocks, bonds, money market funds, or real estate investments. Nevertheless, the Trustees continued to remain overinvested in JPMorgan funds, and to retain JPMorgan as investment advisor, even as the Trust went from merely not making money to affirmatively losing it.

32.

So neglectful were the Trustees of their fiduciary duties to the Trust that when Plaintiff Susan Fronsoe emailed the Trustees on October 13, 2008 about the fact that the Trust had lost over $2 Million Dollars in only a few short months, knew they were busy, but wanted to have some sort of response or help for the situation, John Callan responded with an "eye on the market" study, but did not

answer the questions posed by the Plaintiffs as their underperforming Trust assets dwindled away. (Exhibit "F").

33.

On July 27, 2010, John Callan sent an email to all the Beneficiaries stating that he thought it was time to dissolve the LLC because there had been so many requests to redeem individual interests in the LLC.

34.

However, as of today, the Trustees continue to manage and invest on behalf of Janes LLC. On January 24, 2011, John Phillips announced his retirement from JP Morgan, and has agreed to stay on as a now-individual Trustee. The mismanagement of the Trust continues to this day.

35.

Further, the Trustees did not distribute the trust corpus. Instead, despite repeated requests over the years from the Beneficiaries to distribute the trust, the Trustees began giving a series of shifting answers about why the Trust should not be distributed, ranging from adverse tax consequences to the opportunity to keep the funds under the guidance of experienced investment advisors. When the Beneficiaries continued to request funds, the Trustees simply refused, by mail, electronic mail, and telephone, to disburse, consistently reminding the Beneficiaries that their grandmother had trusted them, and that Foley & Lardner represented the Beneficiaries as counsel in other matters. The Trustees further represented that they had created new trusts for the Beneficiaries, which would be

13

held for the Beneficiaries' lifetimes, and distributed to the Beneficiaries' children on the Beneficiaries' deaths. The Trustees have never provided copies of those alleged trust documents.

<div align="center">36.</div>

The Defendants did not follow the intent of the Grantor, Jane Brooks Holbrook, the language of the Trust, or the several States' prudent investor rules, as they treated identically all of the Plaintiffs even though they were in different stages of their lives and had different needs. For example, Plaintiff Susan Fronsoe, whose trust corpus share the Trustees elected to defer in this manner, has never had and does not have any children, and is past childbearing age. A copy of the Susan A. Fronsoe Trust Created Under the 1967 Jane Brooks Holbrook Trust Determination to Postpone and Defer Termination, signed unilaterally by the Trustees, is attached hereto as well as the other Beneficiariesas (Exhibit G). Her interests are certainly different than those of John DeWind, who had gone through a divorce, or Laura Bennett, who has children.

<div align="center">37.</div>

Foley & Lardner and BankOne (now JPMorgan Chase) continued to take fees from the Trust for their time acting as Trustees, and for legal representation and investment advice. In fact, Foley & Lardner acted as counsel for the Beneficiaries in their own right during this time, charging fees to prepare other wills for family members and offering bankruptcy counsel. Additionally, they would bring additional attorneys on the conference calls with the Trustees, so

<div align="center">14</div>

Foley & Lardner could charge additional fees for services of protecting themselves against and in direct conflict with the interest of the Beneficiaries.

38.

Before December 31, 2003, Jack Porter decided to retire as a Trustee. Foley & Lardner, through Jack Porter and John Callan, then drafted a release for the Beneficiaries to sign, counseling them that it would be in their best interest to do so. The Trustees took this as an opportunity to self-deal, taking advantage of their positions as fiduciaries to induce Plaintiffs to destroy their rights to the Trust corpus. Acting as counsel for the Beneficiaries, Foley & Lardner explained by telephone and by electronic mail that it would be in the Beneficiaries' best interest to release Porter of all claims so that he would not need to file paperwork with the court to show his good management of the Trust during his time as Trustee. No informed consent was given by the Plaintiffs. Foley & Lardner undertook to scare the Beneficiaries into signing a release for Mr. Porter based on the representation that going to court for an accounting would cost the Trust an exorbitant amount of money that would affect the distributions to the Beneficiaries. The Trustees always used the scare tactic of "you will lose your distribution if you challenge my authority." This scare tactic is evident when the Trustees told the Beneficiaries that it would cost them $10,000 and $15,000 respectfully to two different audits of the trust, which would come out of distributions.

15

39.

Gerald M. Holbrook, John M. DeWind, Jane D. Chason, and J. Scott DeWind signed the release, exclusively relying on the legal and fiduciary advice of Foley & Lardner. (Exhibit "H"). The release, however, did not merely release Jack Porter from all liability; it released all Trustees from liability. Foley & Lardner, though it acted as attorney for the Beneficiaries by offering them legal advice in connection with this release, did not disclose this full release or its effect to the Beneficiaries. Because those releases were obtained by fraud, however, they are legally null and void.

40.

Continuing this part of their scheme to relieve themselves of any legal liability for their wrongful acts, on June 28, 2004, John Callan wrote to Michael Fronsoe on Foley & Lardner stationery, requesting that Fronsoe have his mother sign enclosed release documents and "put an 'x' if she is unable to sign them." The letter further urged Fronsoe to have his mother "[back] date each of these documents November 7, 2003 (even though this letter is dated June 28, 2004), the date of our fall meeting. (Exhibit "I"). No witness or notary public is required for these documents." Michael's mother was sick, and died a mere few months later. Although their trusted family attorney – and trustee and fiduciary – had asked them to essentially commit mail fraud, Michael did not hold a power of attorney for his mother, and could not legally perform what Callan had asked.

41.

To make matters worse, Sandra Gnerlich, paralegal at Foley & Lardner sent an email to Michael Fronsoe on February 26, 2004 stating that "on February 2, 2004 John Callan mailed to you and your mom the Director's Consent Resolution and Waiver of Notice. We need those documents signed and returned to us. Pat can put an "x" if she is unable to sign." (Exhibit "J"). The Trustees as fiduciaries asked someone, who lacked the legal power to do so, obtain a signature from someone who was unable to read, unable to sign, and dying, purely to relieve themselves of liability.

42.

At all relevant times, on information and belief, Foley & Lardner represented BankOne/JPMorgan in hundreds of matters across the country. Foley & Lardner neither disclosed this representation to Plaintiffs, nor obtained a conflict waiver from them; it nevertheless continued to provide legal services to the Trust, BankOne, and the individual Beneficiaries, despite their conflict of interest. Indeed, although Foley & Lardner was and is counsel for JP Morgan/Bank One, neither party disclosed this relationship to the Plaintiffs.

43.

During this time, the Trustees would hold quarterly board meetings by interstate telephone call, with some of the Beneficiaries acting as board members of Janes Corporation. Although minutes were kept of these meetings by Jack Porter, then Sandy Gnerlich, then John Callan (all of whom were and are Foley &

Lardner attorneys), the Secretaries of the corporation and, in the case of Porter and Callan, Trustees, no one ever signed those meeting minutes. Additionally, the Plaintiffs asked on several occasions to receive information to be presented in meetings in enough time prior to meetings to understand the import of the information; however, most information was rushed upon them with insufficient time to prepare before those meetings, leaving them with many unanswered questions. Whenever a Beneficiary raised concerns like potential conflicts on BankOne's or Foley & Lardner's parts, the Trustees would promise to look into those concerns, and then never report back. Indeed, whenever the Plaintiffs would raise questions about the propriety of JPMorgan's work as Trustee and as investment advisor, the Plaintiffs were informed that providing an external audit of JPMorgan's performance would cost tens of thousands of dollars, so the Trustees did not recommend the same. Further, when questioned by the Beneficiaries, the Trustees would simply offer misleading statements to the Beneficiaries as shown in the attached (Exhibit "K") answer to question number 12 from J. Scott DeWind, where John Callan represents that they do not represent JPMorgan (individually or as successor to BankOne) as an investment advisor. He failed to state that they do represent JPMorgan in other legal matters and that JPMorgan was a significant and lucrative client of the firm.

<div align="center">44.</div>

BankOne and Foley & Lardner would frequently have other BankOne and Foley & Lardner personnel attend the board meetings. All Foley & Lardner

<div align="center">18</div>

attorneys, including the Trustees, who attended those meetings, would bill the Trust for their attendance.

45.

The Trustees developed a practice of funding yearly retreats for the Trustees and Beneficiaries, and for three years held these in lavish locations, with all expenses paid. The retreats were organized across state lines, and funded out of the Trust corpus. On information and belief, the Trustees would bill the Trust for their attendance. Trustees violated Jane Brooks Holbrook's intent by being spendthrift themselves or allowing spendthrift activities of the Trust, as at the request of the Trustees, the traveling reimbursement plan was amended so that the Trustees could pay for their family to come on the trips with them, even though they have nothing to do with the managing of the Trust. After deciding that these were too costly, the Trustees decided to reduce the meetings to only the Board members. Sometime thereafter, the Board began having its meetings by conference call only.

46.

On July 1, 2004, JP Morgan Chase & Co. purchased BankOne. On information and belief, Foley & Lardner transferred its representation of BankOne to JP Morgan Chase & Co. Again, Foley & Lardner neither notified the Beneficiaries of this conflict, nor obtained conflict waivers from them.  (To this day, Foley & Lardner has never disclosed any conflicts or attempted to have them waived).

47.

From the creation of the Trust through the present, despite representing one of the Trustees in hundreds if not thousands of matters, and despite the conflict inherent in so doing, Foley & Lardner represented the Trust in over one hundred and forty (140) matters. It also represented the individual Beneficiaries in several matters, in which they were able to obtain private information on each Beneficiary that was used against each Beneficiary.

48.

On June 25, 2004, at a telephonic Board meeting of Janes Corporation, not the Trustees, but Joel Seibold of JP Morgan, notified Plaintiffs of a potential conflict on BankOne's/JP Morgan's part. He explained that because the Trust now held a number of BankOne investment funds, BankOne/JP Morgan was conflicted, and could not act as investment advisor unless the board of Janes Corporation agreed to divest itself of BankOne funds. The board, including the Beneficiaries and Trustees, agreed to do so, and a five-year divestment plan was undertaken. (Exhibit "L").  However, this divestment plan was never actually provided to the Beneficiaries, and when it was after demand through counsel, it was provided but not signed.  To make matters worse, the conflict had now been disclosed, but the Trustees did not recommend changing to a different portfolio management company or simply divesting immediately from JP Morgan funds to insure no conflict, and at any rate, neither were done. Furthermore, it would not have mattered what the Plaintiffs wanted, as at all times the Trustees had voting rights

20

over the majority of the stock of Janes Corporation (and later the membership interests of Janes LLC) and so could outvote the Plaintiffs any time they chose.

<div align="center">49.</div>

In reality, the Trustees had no desire to end what had been a lucrative financial arrangement for them, and so never fully undertook the divestment plan. Thus, during this time, Foley & Lardner and BankOne/JP Morgan continued to take fees from the Trust for their time acting as Trustees, and for legal representation and investment advice, and Janes Corporation never fully divested itself of its BankOne funds.

<div align="center">50.</div>

In fact, in an email from John Callan dated July 9, 2010, Callan stated:

> "I wanted to let you know that JP Morgan has prepared, and I have signed on behalf of Janes LLC, a new investment policy statement which limits the use of structured investment products to no more than 8% of the portfolio. Although our current structure exceeds this limitation, we agreed that JP Morgan should hold our current structure until they mature but not purchase any new structures unless and until we are once again below the 8% limitation." (Exhibit "M").

This statement, made years after the so-called divestment plan was to be completed, demonstrates that despite a divestment plan introduced and repeatedly promised to the Plaintiffs, the Trustees never bothered to resolve the conflict with JPMorgan. Indeed, at no time did the Trustees actually divest from JPMorgan funds, nor did they ever have less than 8% of the corpus under its direct management.

<div align="center">21</div>

51.

With the decline in all asset classes in 2008, the Trustees saw an opportunity to lock down their continued abuse of the Trust and the Beneficiaries. Under the guise of a favorable tax window, the Trustees communicated with the Beneficiaries by telephone and electronic mail across state lines, and convinced the Beneficiaries – who relied on the Trustees' advice as fiduciaries -- to dissolve Janes Corporation and transfer its assets to a new entity, Janes LLC.

52.

Foley & Lardner charged the Trust over $30,000 in fees for the act of dissolving a Delaware corporation and creating a Delaware limited liability company – both of which were and are the Trustees' vehicles for depleting the Trust over time. (See attached Exhibit "N" Janes Corporation Net Distribution Proceeds.)

53.

During this time, the value of the Trust decreased – because of the lost asset value, the tax penalty for changing the Trust vehicle from Janes Corporation to Janes LLC, and because of the exorbitant fees charged by the Trustees – to roughly four million dollars.

54.

Once the Trust assets were locked up in Janes LLC, the Trustees ceased the divestment plan and began immediately investing the remaining Trust funds heavily in JP Morgan investment funds, a project that began in 2005 but picked up

with the end to the Janes Corporation divestment plan. Both Foley & Lardner and JP Morgan have continued to bill the Trust for legal work and investment advice, while not following the divestment plan, in direct conflict with the Beneficiaries' interest, and while investing outside the Investment Charter (Exhibit "O") and the Investment Advisory and Custody Agreement (Exhibit "P").

### 55.

The corpus of the 1967 Jane Brooks Holbrook Trust has decreased by over fifty-seven percent (57%) in the last eleven years.

### 56.

The Trustees have, with a single exception, refused to distribute the corpus to the Beneficiaries. That exception is Plaintiff John DeWind; instead of distributing his entire share, the Trustees instead enacted a complicated formula that gave him only a fraction of his share, while still removing him as a beneficiary of the Trust. Both JPMorgan and Foley & Lardner took fees for providing DeWind his reduced share.

### 57.

The Trustees provided the Plaintiffs a booklet, a copy of which is attached as Exhibit "Q" the relevant section of which (page 10, section IV, Taxation of Janes Corporation) states as follows:

> "[The Corporation] must distribute to its shareholders each year essentially all of the net dividend and interest income.  If it did not do so, it would be subject to severe tax."

23

The Trustees did not distribute "essentially all of the net dividend" and interest income every year as required by the Grantor. By not distributing the money as intended, the Trust – and the Beneficiaries – have suffered losses and unnecessary tax ramifications. JPMorgan, by contrast, has enjoyed greater revenue as it has been able to draw a share of a larger set of assets under management.

58.

Further, from the same source (Exhibit "R"):

"The long term goal of the Corporation is to enjoy substantial growth in two respects:  Growth in the value of the assets and growth in cash flow for those assets can generate for the Shareholders in the form of dividends paid by the Corporation."

Despite this mandate, the Trustees made dividend distributions smaller over the years so they could get obtain larger fees and adversely affect the Trust from a tax perspective.

59.

Additionally, Defendants – who, on April 17, 2002, had asserted that "the Trust does not permit any principal distribution     whatsoever" – allowed Plaintiff Gerald M. Holbrook to make withdrawals from the Trust. (Exhibit "S").  Thus, on Thursday, July 16, 2009 in an email from John Callan to Gerald M. Holbrook, John Callan stated that, "We might be able to make a small principal distribution to you from your 1967 Trust." The apparent conflict between the Trustees' position on distributions – a position they have maintained to this day – and their treatment of Plaintiff Holbrook's request has never been reconciled. Furthermore, despite the fact that the Trustees claimed that the distributions would be from Gerald

24

Holbrook's own alleged trust, they have never provided any documents of such trust to test the veracity of their statements.

60.

Defendant Michael Sessa, is an employee of JPMorgan who does not hold a Series 7 license, and is the lead financial advisor for the Trust. He supervises two junior JPMorgan bankers in the management of the account, despite the lack of that Series 7 license. Of the two junior bankers, one received his Series 7 in 2007 (and has had complaints made against his license), and one received his Series 7 in 2009. The Trustees have deliberately and knowingly left the care of this trust's funds in the hands of an unlicensed financial advisor and two highly junior bankers, even as the Trust's corpus has withered away over time.   (See attached Exhibit "T").

61.

Each Beneficiary is and has been over the age of 35 for over 8 years.

62.

Additionally, there is no spendthrift language in the trust documents.

63.

Each Plaintiff is *sui generis*, of right mind, competent to manage his own affairs, and otherwise not subject to any guardianship or other restriction on his capacity. Distribution of each Plaintiff's share of the trust would be in the best interests of each Plaintiff, and fulfill the purposes of the Trust.

64.

Foley & Lardner and JPMorgan have taken fees, totaling tens of thousands of dollars annually, from the Trust corpus over the last ten years and more.

65.

Plaintiffs have demanded, among other items, an accounting of the books of the trusts, including but not limited to the corporate books of Janes LLC, and each individual alleged trust set up in the names of each of the Plaintiffs. A copy of the demand letter for the same is attached hereto as (Exhibit "U") and incorporated by reference.

66.

Defendants have produced some of the documents requested, but have refused to produce many of the same to Plaintiffs after multiple requests.

67.

As Beneficiaries of the 1967 Jane Brooks Holbrook Trust and the other alleged beneficiary named trusts, Plaintiffs are entitled to an accounting of the Trust and trusts. As members of Janes LLC and shareholders in Janes Corporation, Plaintiffs are entitled to an accounting of the limited liability company by statute and by operating agreement, and of the corporation by statute and articles of incorporation. (See attached Exhibit "V".)

68.

After filing an accounting Complaint in May of 2011 in Fulton County Superior Court, Defendants finally turned over 1.5 boxes of documents. One box

included portfolio statements of the Plaintiffs for period of time from 2004 till the present. The other box contained a few other documents including the Trust, the amended Trust, and a few releases.

<div align="center">69.</div>

Foley and Lardner charged the Trust over $30,000.00 for the act of reviewing and producing those 1.5 banker's boxes' worth of documents. The Trustees and attorneys never told the Plaintiffs how much they would be charging nor have they ever invoiced them, but simply taken the money from the Trust(s).

<div align="center">70.</div>

The Trustees produced a bare handful of further documents. When queried where the documents prior to 2004 were, the Trustees explained that they believed they had been released from any liability for that time period, and so did not need to produce those documents. Specifically, they stated:

> "As I explained to you in my letter, your clients previously approved the trustees' administration and released the trustees from any liability for all periods of time through December 31, 2003, the effective date of Jack Porter's resignation. Accordingly, I am limiting my response to events that occurred on or after January 1, 2004."

<div align="center">71.</div>

Plaintiffs cannot make an accurate accounting of the Trust, Janes Corporation, or Janes LLC, without those documents. The Trustees know this, and their refusal to produce those documents is probative of their conspiracy to steal from the Trust and the Plaintiffs, taking advantage of their positions as fiduciaries.

<div align="center">27</div>

Because Defendants have refused, in furtherance of their conspiracy, to produce relevant documents, and repeatedly hid relevant information from the Beneficiaries over the years, Plaintiffs are unable to identify the full extent of Defendants' perfidy at this time.

72.

What documents the Trustees did produce revealed part of their disturbing conspiracy.

73.

Thus, for example, on February 26, 2004, Sandra Gnerlich, a paralegal for Foley & Lardner, sent an email from her Foley & Lardner account to Michael Fronsoe, stating that on February 2, 2004, John Callan had mailed him and his mother a Director's Consent Resolution and Waiver of Notice, and that those documents needed to be signed and returned. Michael's mother was terribly ill, and so Ms. Gnerlich suggested that she simply sign those documents – and six others they had sent her – with an "X." This was followed by a letter sent by the United States mail on June 28, 2004, from John Callan to Michael Fronsoe, sent on Foley & Lardner letterhead, requesting that Fronsoe have his mother "sign a bunch of release documents and do put an "x" if she is unable to sign them." The letter further states that "[your] mother should [back] date each of these documents November 7, 2003 (even though this letter is dated June 28, 2004), the date of our fall meeting. No witness or notary public is required for these documents." Michael had no power of attorney to back-date his mother's documents. Michael's

28

mother, who was sick, unfortunately died a few months later. She did not sign the documents as requested by her trusted fiduciary and family attorney.

74.

All told, over the course of decades of mismanagement and malfeasance, the Trustees and other Defendants have deprived the Trust – and the Beneficiaries – of over $10,000,000.00, not including the fees and costs they have expended to reach this point. Even now, the Trustees and other Defendants are using the Trust corpus to prolong and defend their scheme.

<div align="center">

**COUNT I**
**LEGAL MALPRACTICE BY FOLEY & LARDNER**

</div>

75.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

76.

Foley & Lardner repeatedly held itself out to Plaintiffs as their counsel, and frequently even worked on other matters on their behalf, for regular billable rates. However, though Foley & Lardner held itself out as counsel for Plaintiffs and the Trust, it acted exclusively in its own and JP Morgan's/BankOne's best interests, and never revealed that conflict to Plaintiffs or obtained a waiver of that conflict.

77.

Thus, Foley & Lardner held itself out as Plaintiffs' counsel by providing John M. DeWind, Jane D. Chason, and J. Scott DeWind legal advice about signing the above-described releases, knowing that they had prepared the release to

<div align="center">29</div>

exculpate themselves and their client, BankOne. In violation of Wisconsin Supreme Court Rule 20:1.8, Foley & Lardner knew that this raised an irrevocable and unwaivable conflict, and yet proceeded to advise John M. DeWind, Jane D. Chason, and J. Scott DeWind to sign the releases, even asking those Plaintiffs to commit fraud, by mail, in so doing. Foley & Lardner did not give the Plaintiffs a reasonable amount of time to obtain independent legal counsel in that matter, nor did it inform them that independent counsel was needed. Instead, Foley & Lardner limited the ability of the Plaintiffs to have the Court act as an impartial arbiter of the costs and liabilities of the Defendants, and instead foreclosed some of Plaintiffs' ability to do so.

<center>78.</center>

Foley & Lardner also directly acted as counsel for the Plaintiff Beneficiaries, both in their capacities as Beneficiaries, and in their individual capacities on other legal matters, during the time from the inception of the Trust to the present.

<center>79.</center>

Defendant John Callan, in his capacity as Trustee and counsel for John M. DeWind, Jane D. Chason, and J. Scott DeWind, told them that signing the releases would be in their best interest; Callan knew or should have known they would rely on his advice in so doing, and potentially sign away their rights against all of the Trustees in so doing.

<center>30</center>

80.

Furthermore, Foley & Lardner charged $30,000 to the Trust for preparing a single banker's box worth of documents, knowing that doing so would deplete the trust for this exorbitant fee. This act was in contravention to their duties to their clients – the Beneficiaries and the Trust – and in violation of Wisconsin Supreme Court Rule 20:1.5. Further, no estimate, or invoice has been presented at any time to the beneficiaries.

81.

In violation of Wisconsin Supreme Court Rule SCR 20:1.4, Foley & Lardner refused, despite repeated requests, to provide documents accounting for the trust's finances (including its own invoices and correspondence with the other trustees), refused to provide requested information about the trust's investments and distributions, refused to provide consistent reasons for refusing to distribute the trust corpus to the beneficiaries, and did not disclose its conflicts in representation while representing the Beneficiaries, all for its own pecuniary benefit. Foley & Lardner's attempt to continue in the face of its conflicts caused it to, among other things, fail to advise the Beneficiaries of the consequences of the release it pushed them to sign (thereby nominally foreclosing rights against the Trustees), fail to advise the Beneficiaries of their rights under the Trust, to postpone the Plaintiffs' distribution for the benefit of their children even when the Plaintiffs did not and will not have children, and fail to advise them of their rights against the Trustees for their mismanagement of the Trust.

31

82.

Insofar as the above were not intentional acts, they were grossly negligent acts, in which Foley & Lardner fell below the standard of care required as counsel for Plaintiffs. The Trust hired Foley & Lardner to perform what appears to be 145 separate legal services. Foley & Lardner failed to exercise ordinary care, skill, and diligence, and that failure proximately caused damages. Plaintiffs have, as a direct and proximate result of these negligent acts, lost trust funds; lost opportunities to reclaim the money their grandmother left in Defendants' care; lost the time-value of money; and should this Court determine that the releases, procured by fraud or by negligence, are valid, the ability to sue the Trustees for mismanaging the Trust.

83.

As a direct and proximate result of the actions of the Defendants, Plaintiffs have been economically damaged in an amount exceeding $10,000,000.00, to be determined at trial. Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT II
## BREACH OF FIDUCIARY DUTY BY JPMORGAN
## AND FOLEY & LARDNER

84.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

85.

The Defendants, by contract and by statute, are and at all relevant times were fiduciaries of the Plaintiffs, as attorneys, as managing members/managers of Janes LLC, as officers of Janes Corporation, as trustees of the Jane Holbrook Trust and of the several "trusts" they allegedly created pursuant to the Jane Holbrook Trust, and as financial advisors. Foley and Lardner has those duties severally and independently of each other, as created by statute and common law. JPMorgan has those duties, save that of attorney, severally and independently of each other, by statute and by common law.

86.

Although Foley & Lardner was and is counsel for JP Morgan/Bank One, neither party disclosed this relationship to the Plaintiffs, and so violated their duty of good faith and fair dealing to the Plaintiffs.

87.

In its capacity as the Trust's investment advisor, JP Morgan took management fees from the Trust yearly. It did not disclose any breakdown of these

33

fees to Plaintiffs so that they could judge their reasonableness. Foley & Lardner consented to these fees.

<div align="center">88.</div>

In its capacity as counsel for the Trust, the Trustees, and the Beneficiaries, Foley & Lardner took excessive fees from the Trust yearly and at times monthly. It did not disclose these fees to Plaintiffs. JPMorgan consented to these fees.

<div align="center">89.</div>

Although both Trustees knew that JPMorgan was conflicted from acting as a Trustee and investment advisor for the Trust so long as the Trust was invested in JP Morgan funds, and accordingly set out a divestment plan of BankOne/JPMorgan assets, neither Trustee advanced the divestment plan; both Trustees consented to allow additional funds to be invested in JPMorgan funds; and both Trustees worked to hide the failure to advance the divestment plan by dissolving Janes Corporation and forming Janes LLC.

<div align="center">90.</div>

The Trust badly underperformed the market in every relevant year. Nevertheless, even though asset classes were booming or rebounding in the wake of the 2001-2002 recession, neither Trustee divested the Trust's funds from JPMorgan to better-performing asset classes and investment management.

<div align="center">91.</div>

When the Plaintiffs raised the possibility of hiring an auditor to review JP Morgan's work, or an alternate investment advisor, Defendants diligently worked

<div align="center">34</div>

to thwart those efforts, knowing that Plaintiffs had placed their trust in Defendants as their fiduciaries. As a single instance of this effort, the Defendants represented that it would cost the Trust exorbitant fees to audit JPMorgan's substandard work, and advised against hiring such an auditor; trusting their fiduciaries, the Plaintiffs agreed, and so lost critical opportunities to end the hemorrhaging of the Trust's value.

92.

Defendants further breached their duty, as set forth in the booklet the Trustees provided the Plaintiffs, on page 10, section IV, Taxation of Janes Corporation:

> "[The Corporation] must distribute to its shareholders each year essentially all of the net dividend and interest income.  If it did not do so, it would be subject to severe tax."

The Trustees breached their duties as Trustee by not distributing "essentially all of the net dividend" and interest income every year as required by the Grantor. By not distributing the money as intended, the Trust – and the Beneficiaries -- have suffered losses and unnecessary tax ramifications.

93.

Further, from the same source:

> "The long term goal of the Corporation is to enjoy substantial growth in two respects:  Growth in the value of the assets and growth in cash flow for those assets can generate for the Shareholders in the form of dividends paid by the Corporation."

The Trustees breached their duties as Trustees by actually making dividend distributions smaller over the years so they could get obtain larger fees and adversely affect the Trust from a tax perspective.

94.

Additionally, Defendants -- who, on April 17, 2002, had asserted that "the Trust does not permit any principal distribution    whatsoever," allowed Plaintiff Gerald M. Holbrook to make withdrawals from the Trust. Thus, on Thursday, July 16, 2009 in an email from John Callan to Gerald M. Holbrook, John Callan stated that, "We might be able to make a small principal distribution to you from your 1967 Trust." Thus, either the Trust could not make distributions, and the Trustees allowed a distribution they were not allowed to make; or in the alternative, the Trustees have arbitrarily chosen to distribute partial payouts to some Beneficiaries and not others. Furthermore, despite the fact that the Trustees claimed that the distributions would be from Gerald Holbrook's own alleged trust, they have never provided any documents of such trust to test the veracity of their statements.

95.

Defendants additionally breached their duties in the transfer of assets from Janes Corporation to Janes LLC, as exemplified in the Janes Corporation Net Liquidation Proceeds Schedule 1, which contains a line item for "Attorney's Fees and Other Costs of Liquidation" listed at $30,000.00.  This cost – for the act of closing a Delaware Chapter C Corporation and creating a Delaware Limited Liability Company is beyond exorbitant considering the de minimis amount of

work that needs to be done to transfer from a corporation to a limited liability company, especially considering the official fees charged by the Secretary of State of Delaware would be less than $500.00.

96.

Another example of Defendants' breaches of their duty is evident in an email from John Callan dated July 9, 2010, which states:

> "I wanted to let you know that JP Morgan has prepared, and I have signed on behalf of Janes LLC, a new investment policy statement which limits the use of structured investment products to no more than 8% of the portfolio. Although our current structure exceeds this limitation, we agreed that JP Morgan should hold our current structure until they mature but not purchase any new structures unless and until we are once again below the 8% limitation."

This statement, made *years after* the so-called divestment plan was to be completed, shows the Trustees acting in direct conflict with that plan and their duties to the Plaintiffs by continuing to hold JPMorgan products when they claimed they could not do so because of a conflict.   Indeed, at no time did the Trustees actually divest from JPMorgan funds, nor did they ever have less than 8%. Clearly, this was done in the best interest of JPMorgan and not the Beneficiaries.

97.

Further, Defendants breached their duty by maintaining the Janes Corporation vehicle for decades despite what they admitted, in an email dated August 11, 2010, was a "very disfavored tax treatment." Despite this disfavored tax treatment, the Trustees maintained the Janes Corporation form year after year, changing to Janes LLC only when they elected to hide their failure to complete the

divestment plan – a change which moved the remaining trust funds into a different, unfavorable tax treatment, eliminating the ability of the Trust to build gains over time for the future generations the Trustees claimed they were protecting.

98.

Additionally, on June 28, 2004, John Callan wrote to Michael Fronsoe on Foley & Lardner stationery, requesting that Fronsoe have his mother sign enclosed release documents and "put an 'x' if she is unable to sign them." The letter further urged Fronsoe to have his mother "[back] date each of these documents November 7, 2003 (even though this letter is dated June 28, 2004), the date of our fall meeting. No witness or notary public is required for these documents." Michael's mother was sick, and died a mere few months later. Although their trusted family attorney – and trustee and fiduciary – had asked them to essentially commit mail fraud, Michael did not hold a power of attorney for his mother, and could not legally perform what Callan had asked.

99.

To make matters worse, Sandra Gnerlich, paralegal or attorney at Foley & Lardner sent an email to Michael Fronsoe on February 26, 2004 stating that " o n February 2, 2004 John Callan mailed to you and your mom the Director's Consent Resolution and Waiver of Notice. We need those documents signed and returned to us. Pat can put an "x" if she is unable to sign." In other words, the Trustees were abusing their fiduciary position to have someone, who lacked the legal power to do

so, obtain a signature from someone who was unable to read, unable to sign, and dying.

<div align="center">100.</div>

The Defendants breached their duty by failing to provide itemized invoices for the exorbitant fees they charged the Trust, going so far as to refuse to provide those invoices because

> "As I explained to you in my letter, your clients previously approved the trustees' administration and released the trustees from any liability for all periods of time through December 31, 2003, the effective date of Jack Porter's resignation. Accordingly, I am limiting my response to events that occurred on or after January 1, 2004."

<div align="center">101.</div>

Putting to the side the fact that not all Plaintiffs were deceived into signing the alleged release – and there is therefore no basis to withhold those documents from them – the failure to provide needed documents to ascertain the value of the Trust is a breach of fiduciary duty. There is no adequate basis at law to refuse to provide the requested documents. That the Trustees would hide behind a wrongfully-procured release as an excuse not to produce documents makes their culpability all the clearer, and their breach worse.

<div align="center">102.</div>

Furthermore, Foley & Lardner's response above clearly demonstrates that Foley and Lardner has an insurmountable conflict of interest between the Trustees, itself, JP Morgan, and the Plaintiffs, and that this conflict has interfered with the discharge of its fiduciary duties; however, it is choosing to ignore the conflict and

<div align="center">39</div>

pick a side to contrary to the Plaintiffs, and not in their best interest as their fiduciary.

103.

Defendants breached their duty by failing to follow the guidelines of the Bank One Trust Company, N.A, Investment Advisory and Custody Agreement, by investing outside the charter, and by investing the same way for different beneficiaries whose lives were differently situated.

104.

Each of these acts, along with those others identified above, constitute breaches of the fiduciary duties under which the Trustees labored, knowing and negligent. The proximate result of these acts was an underperforming trust, from which Defendants freely and callously took excessive fees while neglecting the performance of the Trust. Plaintiffs, and the Trust, have been proximately and directly harmed in amounts in excess of ten million dollars.

105.

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT III
## NEGLIGENT MISREPRESENTATION

### 106.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

### 107.

The Trustees, working together, told the Plaintiffs to sign the Releases described above, stating that doing so would be in their best interest.

### 108.

Whenever the Plaintiffs demanded their shares of the Trust, the Trustees gave them shifting reasons without basis in fact or law why they could not receive those distributions. Whenever Plaintiffs raised the issue of a conflict on the part of the Trustees, the Trustees held out that there was no conflict, even though there was one.

### 109.

Defendants negligently misrepresented the truth to the Plaintiffs many times, including in an email dated December 15, 2008 from Plaintiffs to John Callan, in which the Plaintiffs asked Callan about any conflicts of interest that John Callan, John Phillips, JP Morgan, and Foley & Lardner may have.  Callan responded with:

> "John Phillips and I are currently serving as trustees of the 1967 Trusts and as directors of Janes Corp. in our individual capacities (not as an officer of JP Morgan or a partner of Foley & Lardner.)  The same will be true when we become managers of Janes LLC. As Trustees and manages, John and I have a fiduciary duty to do what we feel is in the best interest

of the trust and the company, including changing investment advisors if we think it is appropriate. Foley & Lardner are serving as legal counsel for Janes Corp. (soon to be Janes LLC) and acts on behalf of the board. It does not represent JP Morgan as investment advisors. I hope this helps."

110.

The statement made by Callan is at best a negligent misrepresentation of the truth, and is at worst an outright lie and an attempt to confuse the Beneficiaries. Foley & Lardner at all relevant times did and does represent JPMorgan (and before that, BankOne); however accurate the specific choice of terms might be, the Plaintiffs reasonably relied on their fiduciary and counsel to straightforwardly advise them of any conflicts. The confusing language the Trustees chose left Plaintiffs reasonably believing there was no conflict, in turn allowing the Trustees to continue to plunder the Trust.

111.

Further, Defendants negligently represented JPMorgan's value as Trustee and investment advisor, as in the Janes Corporation Board of Directors Meeting on November 28, 2006, in which J. Scott DeWind asked whether the Board should be concerned about the fact that many of the mutual funds in the portfolio are JPMorgan mutual funds. The first negligent misrepresentation or intentional misrepresentation occurred as the Trustees responded that they would "not hesitate to get out of them if they were not outperforming their benchmarks." The second negligent misrepresentation or intentional misrepresentation occurred as Jim Korgmeier added that it would be less expensive for the Corporation to use JPMorgan mutual funds than it is to use a third party mutual funds. Whether

42

negligently or intentionally made, the effect of these statements was the Plaintiffs' reasonable reliance on their fiduciaries' representations that JPMorgan was a good advisor for the Trust, and that there was no significant conflict in its representation. Thus, even though JPMorgan never even met market benchmarks, the Trustees left all funds with JPMorgan.

<div align="center">112.</div>

By statute and common law, the Trustees had duties of highest care to the Plaintiffs. The failures to correctly advise Plaintiffs of these truths were violations of those duties.

<div align="center">113.</div>

Plaintiffs reasonably and fully relied on the Trustees' misrepresentations. As a result of this reasonable reliance, the Beneficiaries did not attempt to challenge or remove the Trustees, or otherwise work to preserve the Trust.  As a direct and proximate result, Plaintiffs suffered damages including lost value of their Trust shares, lost real profit for their Trust shares, lost time-value of money, and, should this Court decide that the Release is valid, the ability to seek redress for the wrongs of the Trustees prior to the execution of the Release.

<div align="center">114.</div>

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury,

<div align="center">43</div>

to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT IV
## NEGLIGENCE

### 115.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

### 116.

Defendants are Trustees, Attorneys, and investment advisors, all of whom have a duty by statute, common law, and by contract.

### 117.

The Defendants breached their duties and were negligent throughout their time as Trustees. Defendants' own awareness of their duty is evident in an email dated January 19, 2007 from James Krugmeier to J. Scott Dewind. There, Krugmeier states:

> "You are right [Gerald Holbrook's Step-Mother] is generally not included in corporation actions. We have done nothing wrong in the last 8 years. The reason I feel this situation is different is because as Trustees of her trust we need to make sure that the actions of Janes Corp. are in her best interest as well as the best interest of the beneficiaries of all which are involved."

### 118.

This email reaffirms that the Trustees *know* that they have a duty to act in each Beneficiary's best interest. However, because each beneficiary is in a

different point in their respective lives and some have children and some do not, each beneficiary's interest is different, and hence so should their investments be.

119.

Secondly, in an email from John Callan to all Beneficiaries on February 28, 2007, Callan brings up the inability for Janes Corporation to be invested in JPMorgan funds, and that they cannot give advice on it, but they are invested, and they do give advice. Specifically, he says:

> "if the decision is to stick with the divestment plan (which it was), then Joel will need to sell this year's allocation of JP Morgan stock on or before July 31."

However, once again, the Trustees did not follow their own advice – despite recognizing this conflict – and were negligent, as they continued after July 31, 2007 to be invested in JP Morgan funds, and in fact affirmatively chose to be so.

120.

In the Board of Directors Meeting on February 28, 2007, the Board discussed the divestment of JPMorgan funds, and it was agreed that it needed to occur as there was a conflict inherent in investing in JPMorgan funds and retaining JPMorgan as investment advisor. However, the Trustees still did not disclose their conflicts, and again failed to carry out the divestment plan. (Once again, the minutes are not signed).

121.

Strategic Asset Management managed Janes Corporation from a Trust corpus of over $2,000,000.00 in 1990 to over $7,520,000.00 by the time it was

45

replaced in 1996. The Trustees advised the Beneficiaries to change over from SAM without disclosing any conflicts, and based on their statements, the Beneficiaries agreed to transfer management of Janes Corporation to BankOne. BankOne's/ JPMorgan's management of the Trust corpus was and is subpar, but the Trustees allowed BankOne/JPMorgan to continue as investment advisor, even though doing so breached their duty as Trustees to maintain and expand the Trust corpus. The Plaintiffs were damaged as the Trust was negligently mismanaged to the extent of millions of dollars in losses.

122.

Had the money stayed invested the same manner, the Trust corpus would be worth multiples of its worth today.

123.

As demonstrated above, the Trustees engaged in a pattern of extraordinary neglect of the Trust's assets, even while continuing to draw fees from the Trust for that mismanagement. Most glaringly of all, in the face of BankOne's/JPMorgan's horrific performance as an investment advisor over time, the Trustees did not remove JPMorgan as a Trustee and/or investment advisor, they actively continued and expanded JPMorgan's role managing the Trust's assets. As a result of this reckless breach of their duty of care to the Trust, the Trust did not merely lose profits it would have otherwise received, but actively lost real value over time.

124.

As a direct and proximate result and effect of the breach of duty and negligence of the Defendants, the Plaintiffs have been directly economically damaged in the amount of no less than $10,000,000.00 to be proven at trial. Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT V
## FRAUDULENT MISREPRESENTATION

125.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

126.

The Trustees made false representations of material fact, as outlined above, including the absence of any conflict by the Trustees in the management of the Trust, the performance of the Trust relative to market benchmarks, and the need to continue the Trust indefinitely. The Trustees knew that these representations were false when made – indeed, they admitted internally that those representations were false, by email and by, among other things, Foley & Lardner's representation of JPMorgan in other matters – and knew that the Plaintiffs would rely on the

47

Trustees' representations because the Trustees occupied trusted positions as fiduciaries. Plaintiffs reasonably and justifiably relied on these misrepresentations and omissions, as the Trustees held themselves out as Plaintiffs' counsel, fiduciaries, and investment advisors, and purported to act as their fiduciaries in administering the Trust. Plaintiffs, and the Trust, were damaged as a result, to the extent of millions of dollars of lost trust corpus value.

127.

Plaintiffs are therefore entitled to all consequential and incidental damages, stemming from Defendants' fraudulent misrepresentations in an amount to be determined by the enlightened conscience of a jury; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT VI
## CONVERSION

128.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

129.

The Trust contains property, cash, and assets that belong to the Beneficiaries. The Trustees are responsible for protecting that property, cash, and assets, with the highest duty of care, and to turn over those items when required by the Trust.

48

Instead, when the Plaintiffs had all turned thirty-five and later demanded their shares of the Trust, the Trustees refused to distribute the amounts due and owing (or in the case of John DeWind, withheld the full amount of his value of the Trust corpus and charged him extraordinary fees for the act of distribution). Furthermore, the Trustees readily and regularly took inflated fees for their services from the Trust, year after year for decades. Because they were not entitled to the money of the Trust, took it intentionally, and withheld it from its rightful owners – the Plaintiffs – they have committed conversion.

<div align="center">130.</div>

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

<div align="center">

**COUNT VII**
**BREACH OF CONTRACT**

</div>

<div align="center">131.</div>

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

<div align="center">132.</div>

Defendants had contracts with the Plaintiffs via the Operating Agreement of Janes LLC, the By-Laws of Janes Corporation, the Charter agreement, and the

<div align="center">49</div>

Investment Agreement.   Each agreement had consideration and defined each party's obligations and responsibilities. By self-dealing and depleting the corpus of the Trust, and acting in negligent manners, the Defendants breached those agreements.

<div align="center">133.</div>

As a direct result of the Defendants' actions, Plaintiffs have been economically damaged. Thus, Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury and attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness.

<div align="center">

**COUNT VIII**
**BREACH OF WISCONSIN STATUTES § 881.01, THE WISCONSIN**
**UNIFORM PRUDENT INVESTOR ACT**

</div>

<div align="center">134.</div>

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

<div align="center">135.</div>

The Defendants are fiduciaries as defined by Wisconsin Statutes § 881.01, Wisconsin's Uniform Prudent Investor Act.   Further, pursuant to that Act, a fiduciary who invests and manages assets owes a duty to the beneficiaries to comply with the prudent investor rule set forth in this section.

<div align="center">50</div>

136.

Pursuant to that Act, a fiduciary shall invest and manage assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the estate, trust, conservatorship, or guardianship. In satisfying this standard, the fiduciary shall exercise reasonable care, skill, and caution.

137.

The Defendants breached the statute by ignoring the fact that each individual has separate interests and are in different placed in their lives, and investing and managing the assets of the Trust identically for each, producing results such as alleged trusts for the benefit of the Plaintiffs' children for a Plaintiff who has no children and never will.

138.

These actions of the Defendants are also a breach of the Act, which stipulates that a fiduciary's investment and management decisions about individual assets shall be evaluated, not in isolation but in the context of the portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the estate, trust, conservatorship, or guardianship. As stated prior, each Beneficiary is in a different place in their life and has different needs. Furthermore, by failing to diversify the Trust assets, instead leaving them overwhelmingly in the hands of JPMorgan/BankOne funds, the Defendants breached this duty repeatedly over the years.

139.

The portfolios of the Plaintiffs are managed by Bialek, who obtained his Series 7 in May of 2009, and Tiziani, who obtained his in May of 2007. Tiziani has two complaints that were settled in 2009 regarding Auction Rate Securities. Mike Sessa as the Trust Advisor does not even have a series 7, yet continues to manage the Trust's investments to this day.

140.

Additionally, the Defendants were charging 2% (until receipt of the demand letter by counsel for Plaintiffs) of the total funds under management, for an account with less than $4,000,000 as a result of their mismanagement, an amount in excess of standard industry practice, to this day.

141.

As an additional example, in 2010 the Defendants charged Susan Fronsoe and Laura Bennett fees on their K-1 of $6,946.00 and $7,635.00, respectively, and totaling $81,071.93 and $80,751.78.

142.

The Defendants further breached the Act by failing to invest and manage the assets solely in the interest of the Beneficiaries. Investing mostly in JP Morgan funds is not and was not in the best interest of the Beneficiaries but the Defendants. This is also a breach of the Act, as the investments were not impartial.

143.

Additionally, the Defendants breached the Act by repeatedly charging inordinate fees for their services and mismanagement of the Trust. Pursuant to the Act, in investing and managing assets, a fiduciary may incur only costs that are appropriate and reasonable in relation to the assets, the purposes of the estate, trust, conservatorship, or guardianship, and the skills of the fiduciary. It is not reasonable to charge $30,000 to change from a corporation to a limited liability company, or 2% of a Trust corpus your own mismanagement has decimated.

144.

The Defendants breached the Act by failing to reasonably delegate investment and management functions that a prudent fiduciary of similar skills could properly delegate under the circumstances. The Act requires the fiduciary to exercise reasonable care, skill, and caution in selecting an agent. The Defendants did not exercise reasonable caution and skill in delegating management of the Trust assets – beginning with the decision to delegate that management to BankOne's/ JPMorgan's care, continuing to today when the Trust corpus is managed by a lawyer without a Series 7 license and two young fund managers with little experience – and what experience they have they have has been marked with citations for violating securities laws.

145.

The Defendants breached the Act by not having periodic reviews to ensure that Trustees were in compliance with best management practices, and indeed working to thwart every effort by Plaintiffs to ensure that this was done.

146.

The Defendants additionally violated the Act by not disclosing in writing the basis upon which any compensation for their investment services and legal fees were calculated, despite repeated requests for the same, leaving the Beneficiaries unable to gauge the effectiveness and reasonableness of the Trust's management.

147.

As a direct and causal result and effect of the breach of duty and negligence of the Defendants, the Plaintiffs have been directly economically damaged in the amount of no less than $10,000,000.00 to be proven at trial.

## COUNT VIII
## BREACH OF CALIFORNIA PROBATE CODE SECTIONS 16045-16054, THE CALIFORNIA UNIFORM PRUDENT INVESTOR ACT

148.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

149.

The Defendants are fiduciaries as defined by California Probate Code Sections 16045-16054, California's Uniform Prudent Investor Act.   Further,

pursuant to that Act, a fiduciary who invests and manages assets owes a duty to the beneficiaries to comply with the prudent investor rule set forth in this section.

<div align="center">150.</div>

Pursuant to that Act, a fiduciary shall invest and manage assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the estate, trust, conservatorship, or guardianship. In satisfying this standard, the fiduciary shall exercise reasonable care, skill, and caution.

<div align="center">151.</div>

The Defendants breached the statute by ignoring the fact that each individual has separate interests and are in different placed in their lives, and investing and managing the assets of the Trust identically for each, producing results such as alleged trusts for the benefit of the Plaintiffs' children for a Plaintiff who has no children and never will.

<div align="center">152.</div>

These actions of the Defendants are also a breach of the Act, which stipulates that a fiduciary's investment and management decisions about individual assets shall be evaluated, not in isolation but in the context of the portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the estate, trust, conservatorship, or guardianship. As stated prior, each Beneficiary is in a different place in their life and has different needs. Furthermore, by failing to diversify the Trust assets, instead leaving them

overwhelmingly in the hands of JPMorgan/BankOne funds, the Defendants breached this duty repeatedly over the years.

153.

The portfolios of the Plaintiffs are managed by Bialek, who obtained his Series 7 in May of 2009, and Tiziani, who obtained his in May of 2007. Tiziani has two complaints that were settled in 2009 regarding Auction Rate Securities. Mike Sessa as the Trust Advisor does not even have a series 7, yet continues to manage the Trust's investments to this day.

154.

Additionally, the Defendants are charging 2% of the total funds under management, for an account with less than $4,000,000 as a result of their mismanagement, an amount in excess of standard industry practice, to this day.

155.

As an additional example, in 2010 the Defendants charged Susan Fronsoe and Laura Bennett fees on their K-1 of $6,946.00 and $7,635.00, respectively, and totaling $81,071.93 and $80,751.78.

156.

The Defendants further breached the Act by failing to invest and manage the assets solely in the interest of the Beneficiaries. Investing mostly in JP Morgan funds is not and was not in the best interest of the Beneficiaries but the Defendants. This is also a breach of the Act, as the investments were not impartial.

157.

Additionally, the Defendants breached the Act by repeatedly charging inordinate fees for their services and mismanagement of the Trust. Pursuant to the Act, in investing and managing assets, a fiduciary may incur only costs that are appropriate and reasonable in relation to the assets, the purposes of the estate, trust, conservatorship, or guardianship, and the skills of the fiduciary. It is not reasonable to charge $30,000 to change from a corporation to a limited liability company, or 2% of a Trust corpus your own mismanagement has decimated.

158.

The Defendants breached the Act by failing to reasonably delegate investment and management functions that a prudent fiduciary of similar skills could properly delegate under the circumstances. The Act requires the fiduciary to exercise reasonable care, skill, and caution in selecting an agent. The Defendants did not exercise reasonable caution and skill in delegating management of the Trust assets – beginning with the decision to delegate that management to BankOne's/ JPMorgan's care, continuing to today when the Trust corpus is managed by a lawyer without a Series 7 license and two young fund managers with little experience – and what experience they have they have has been marked with citations for violating securities laws.

159.

The Defendants breached the Act by not having periodic reviews to ensure that Trustees were in compliance with best management practices, and indeed working to thwart every effort by Plaintiffs to ensure that this was done.

160.

The Defendants additionally violated the Act by not disclosing in writing the basis upon which any compensation for their investment services and legal fees were calculated, despite repeated requests for the same, leaving the Beneficiaries unable to gauge the effectiveness and reasonableness of the Trust's management.

161.

As a direct and causal result and effect of the breach of duty and negligence of the Defendants, the Plaintiffs have been directly economically damaged in the amount of no less than $10,000,000.00 to be proven at trial.

## COUNT VIII
## BREACH OF COLORADO REVISED STATUTES § 15-1.1-101 *et seq.*, THE COLORADO UNIFORM PRUDENT INVESTOR ACT

162.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

163.

The Defendants are fiduciaries as defined by Colorado Revised Statutes § 15-1.1-101 *et seq.*, Colorado's Uniform Prudent Investor Act.  Further, pursuant to

that Act, a fiduciary who invests and manages assets owes a duty to the beneficiaries to comply with the prudent investor rule set forth in this section.

164.

Pursuant to that Act, a fiduciary shall invest and manage assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the estate, trust, conservatorship, or guardianship. In satisfying this standard, the fiduciary shall exercise reasonable care, skill, and caution.

165.

The Defendants breached the statute by ignoring the fact that each individual has separate interests and are in different placed in their lives, and investing and managing the assets of the Trust identically for each, producing results such as alleged trusts for the benefit of the Plaintiffs' children for a Plaintiff who has no children and never will.

166.

These actions of the Defendants are also a breach of the Act, which stipulates that a fiduciary's investment and management decisions about individual assets shall be evaluated, not in isolation but in the context of the portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the estate, trust, conservatorship, or guardianship. As stated prior, each Beneficiary is in a different place in their life and has different needs. Furthermore, by failing to diversify the Trust assets, instead leaving them

overwhelmingly in the hands of JPMorgan/BankOne funds, the Defendants breached this duty repeatedly over the years.

<p style="text-align:center">167.</p>

The portfolios of the Plaintiffs are managed by Bialek, who obtained his Series 7 in May of 2009, and Tiziani, who obtained his in May of 2007. Tiziani has two complaints that were settled in 2009 regarding Auction Rate Securities. Mike Sessa as the Trust Advisor does not even have a series 7, yet continues to manage the Trust's investments to this day.

<p style="text-align:center">168.</p>

Additionally, the Defendants are charging 2% of the total funds under management, for an account with less than $4,000,000 as a result of their mismanagement, an amount in excess of standard industry practice, to this day.

<p style="text-align:center">169.</p>

As an additional example, in 2010 the Defendants charged Susan Fronsoe and Laura Bennett fees on their K-1 of $6,946.00 and $7,635.00, respectively, and totaling $81,071.93 and $80,751.78.

<p style="text-align:center">170.</p>

The Defendants further breached the Act by failing to invest and manage the assets solely in the interest of the Beneficiaries. Investing mostly in JP Morgan funds is not and was not in the best interest of the Beneficiaries but the Defendants. This is also a breach of the Act, as the investments were not impartial.

<p style="text-align:center">60</p>

171.

Additionally, the Defendants breached the Act by repeatedly charging inordinate fees for their services and mismanagement of the Trust. Pursuant to the Act, in investing and managing assets, a fiduciary may incur only costs that are appropriate and reasonable in relation to the assets, the purposes of the estate, trust, conservatorship, or guardianship, and the skills of the fiduciary. It is not reasonable to charge $30,000 to change from a corporation to a limited liability company, or 2% of a Trust corpus your own mismanagement has decimated.

172.

The Defendants breached the Act by failing to reasonably delegate investment and management functions that a prudent fiduciary of similar skills could properly delegate under the circumstances. The Act requires the fiduciary to exercise reasonable care, skill, and caution in selecting an agent. The Defendants did not exercise reasonable caution and skill in delegating management of the Trust assets – beginning with the decision to delegate that management to BankOne's/ JPMorgan's care, continuing to today when the Trust corpus is managed by a lawyer without a Series 7 license and two young fund managers with little experience – and what experience they have they have has been marked with citations for violating securities laws.

173.

The Defendants breached the Act by not having periodic reviews to ensure that Trustees were in compliance with best management practices, and indeed working to thwart every effort by Plaintiffs to ensure that this was done.

174.

The Defendants additionally violated the Act by not disclosing in writing the basis upon which any compensation for their investment services and legal fees were calculated, despite repeated requests for the same, leaving the Beneficiaries unable to gauge the effectiveness and reasonableness of the Trust's management.

175.

As a direct and causal result and effect of the breach of duty and negligence of the Defendants, the Plaintiffs have been directly economically damaged in the amount of no less than $10,000,000.00 to be proven at trial.

## COUNT VIII
## BREACH OF O.C.G.A. § 53-12-340, THE GEORGIA PRUDENT INVESTOR RULE

176.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

177.

The Defendants are fiduciaries as defined by O.C.G.A. § 53-12-340, Georgia's Prudent Investor Rule. Pursuant to that Act, a trustee must consider among other things, when making investment decisions, general economic

conditions; anticipated tax consequences; the attributes of the portfolio; the expected return from income and appreciation; the Trust's and the Beneficiaries' needs for liquidity, regularity of income, and preservation or appreciation of capital; and the anticipated duration of the trust.

### 178.

Furthermore, while the Act makes clear that a Trustee is judged not merely by his management of a single asset, but of the performance as a whole; and that Trustees with special, related skills has a duty to use those special, related skills. A trustee who is named trustee in reliance upon such trustee's representation that such trustee has special investment skills or expertise shall be held liable for failure to make use of such degree of skill or expertise.

### 179.

The Defendants breached the Act by ignoring the fact that each individual has separate interests and are in different placed in their lives, and investing and managing the assets of the Trust identically for each, producing results such as alleged trusts for the benefit of the Plaintiffs' children for a Plaintiff who has no children and never will.

### 180.

As stated prior, each Beneficiary is in a different place in their life and has different needs. Furthermore, by failing to diversify the Trust assets, instead leaving them overwhelmingly in the hands of JPMorgan/BankOne funds, the Defendants breached their duty repeatedly over the years.

181.

The portfolios of the Plaintiffs are managed by Bialek, who obtained his Series 7 in May of 2009, and Tiziani, who obtained his in May of 2007. Tiziani has two complaints that were settled in 2009 regarding Auction Rate Securities. Mike Sessa as the Trust Advisor does not even have a series 7, yet continues to manage the Trust's investments to this day. The Defendants have therefore breached their duty to exercise their special skills on behalf of the Trust.

182.

Additionally, the Defendants are charging 2% of the total funds under management, for an account with less than $4,000,000 as a result of their mismanagement, an amount in excess of standard industry practice, to this day.

183.

As an additional example, in 2010 the Defendants charged Susan Fronsoe and Laura Bennett fees on their K-1 of $6,946.00 and $7,635.00, respectively, and totaling $81,071.93 and $80,751.78. This breach has cost the Trust untold funds over time.

184.

The Defendants further breached the Act by failing to invest and manage the assets solely in the interest of the Beneficiaries. Investing mostly in JP Morgan funds is not and was not in the best interest of the Beneficiaries but the Defendants. This is also a breach of the Act, as the investments were not impartial.

64

185.

Additionally, the Defendants breached the Act by repeatedly charging inordinate fees for their services and mismanagement of the Trust. Because of the duty of prudence and good faith required by the Act, a fiduciary may incur only costs that are appropriate and reasonable in relation to the assets, the purposes of the estate, trust, conservatorship, or guardianship, and the skills of the fiduciary. It is not reasonable to charge $30,000 to change from a corporation to a limited liability company, or 2% of a Trust corpus your own mismanagement has decimated.

186.

The Defendants breached the Act by failing to reasonably delegate investment and management functions that a prudent fiduciary of similar skills could properly delegate under the circumstances. The Act requires the fiduciary to exercise reasonable care, skill, and caution in management of the Trust. The Defendants did not exercise reasonable caution and skill in delegating management of the Trust assets – beginning with the decision to delegate that management to BankOne's/JPMorgan's care, continuing to today when the Trust corpus is managed by a lawyer without a Series 7 license and two young fund managers with little experience – and what experience they have they have has been marked with citations for violating securities laws.

187.

The Defendants breached the Act by not having periodic reviews to ensure that Trustees were in compliance with best management practices, and indeed working to thwart every effort by Plaintiffs to ensure that this was done.

188.

The Defendants additionally violated the Act by not disclosing in writing the basis upon which any compensation for their investment services and legal fees were calculated, despite repeated requests for the same, leaving the Beneficiaries unable to gauge the effectiveness and reasonableness of the Trust's management.

189.

As a direct and causal result and effect of the breach of duty and negligence of the Defendants, the Plaintiffs have been directly economically damaged in the amount of no less than $10,000,000.00 to be proven at trial.

## COUNT IX
## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1961, ET SEQ.

190.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

191.

The Trustees created an illegal enterprise – first as Janes Corporation, then as Janes LLC – in order to defraud and steal from the Plaintiffs in the several States in which the Plaintiffs live. Janes Corporation and Janes LLC are mere vehicles for

the Defendants' wrongful acts, and were used in the furtherance of their illegal scheme. That scheme, which is demonstrated in the Facts section of this Complaint, is in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. These acts are not merely isolated incidents, but rather part of a decades-long scheme to further the Trustees' interests by mail and wire fraud.

<p style="text-align:center">192.</p>

Thus, for example, when the presence of a conflict between holding JP Morgan/BankOne funds and retaining JP Morgan as financial advisor and Trustee became unavoidable, the Trustees announced a plan to divest the trust of JP Morgan/BankOne funds. Immediately thereafter, without the consent of the Beneficiaries, the Trustees conspired between each other by electronic mail – which was not shared with the Beneficiaries – to consent to use JP Morgan funds as an investment vehicle, for their mutual enrichment and benefit. JP Morgan knew it would be able to extract management fees, and Foley & Lardner knew it would continue to receive attorneys' fees from JP Morgan and the Trust, with the consent of JP Morgan. In order to hide the fact that the divestment plan was a sham, the Trustees dissolved Janes Corporation under the pretense of a favorable taxation event, and immediately created Janes LLC as the new criminal enterprise, which immediately resumed the use of JP Morgan funds despite the self-described conflict.

<p style="text-align:center">67</p>

193.

Furthermore, during the same time period, from 2002 through the present, when the Beneficiaries demanded their shares of the Trust, the corporate forms in which the Trust funds were held were used as a nominal reason to deny that distribution. Thus, in their position as fiduciaries and, in Foley & Lardner's case, attorneys, knowing that the Beneficiaries would rely on their advice and counsel, and knowing that ultimately they would be able to self-deal in any event because of the corporate structures they created, the Trustees refused to distribute funds to the Beneficiaries because doing so would lead to adverse tax consequences as a result of the corporate form.

194.

Moreover, repeatedly and through the same time period, whenever the Beneficiaries would raise questions about conflicts in representation – either by Foley & Lardner or JP Morgan – the Trustees would communicate with the Plaintiffs by wire or by U.S. Mail and assure them that no such conflict existed. Trustees did this knowing that this was untrue; knowing that the Plaintiffs were relying on them as fiduciaries; and knowing that the Trustees had the power to make or deny distributions because of the corporate form of their criminal enterprise: Only the Trustees could make distributions from Janes Corporation or Janes LLC. The Plaintiffs were therefore beholden to the Trustees for the money the Trustees should long ago have distributed to them.

195.

The Trustees performed these acts for their own self-enrichment and to perpetuate their criminal enterprise.

196.

The Trustees made these representations by interstate wire and mail, deliberately reaching into the States in which the Plaintiffs lived to do so. They knew their representations were untrue, knew that the Plaintiffs would rely on them in their capacities as fiduciaries, knew that the representations and reliance would harm the Plaintiffs, and were indifferent to the consequences when the Plaintiffs and the Trust suffered harm as a result.

197.

The Trustees' pattern of self-dealing, as demonstrated by their determination to obtain releases from the Plaintiffs under guise of their fiduciary status, began over a decade ago and continues to this day. The Trust – the Plaintiffs' inheritance – is now a shell of its former size, having been mismanaged and destroyed by Defendants' self-dealing, which would not have happened but for Defendants' criminal enterprise.

198.

The Trustees controlled the enterprise – whether as Janes Corp. or as Janes LLC – in their efforts to defraud and steal from the Beneficiaries and the Trust corpus. Their behavior, as outlined above, represents a continuing pattern of activities, including securities fraud and mail and wire fraud, across state lines, for

decades. The Plaintiffs and the Trust were directly and proximately harmed by reason of and as a result of the Trustees' acts, as demonstrated above.

<div align="center">199.</div>

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; treble damages for Defendants' RICO violations; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

<div align="center">

**COUNT X**
**VIOLATIONS OF O.C.G.A. § 16-14-1, et seq. ("GEORGIA RICO")**

200.

</div>

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

<div align="center">201.</div>

The Trustees created an illegal enterprise – first as Janes Corporation, then as Janes LLC – in order to defraud and steal from the Plaintiffs in the several States in which the Plaintiffs live, including in Georgia. Janes Corporation and Janes LLC are mere vehicles for the Defendants' wrongful acts, and were used in the furtherance of their illegal scheme. That scheme, which is demonstrated in the Facts section of this Complaint, is in violation of O.C.G.A. § 16-14-1, *et seq.*

<div align="center">

70

</div>

("Georgia RICO"). These acts are not merely isolated incidents, but rather part of a decades-long scheme to further the Trustees' interests by mail and wire fraud.

<div align="center">202.</div>

Thus, for example, when the presence of a conflict between holding JP Morgan/BankOne funds and retaining JP Morgan as financial advisor and Trustee became unavoidable, the Trustees announced a plan to divest the trust of JP Morgan/BankOne funds. Immediately thereafter, without the consent of the Beneficiaries, the Trustees conspired between each other by electronic mail – which was not shared with the Beneficiaries – to consent to use JP Morgan funds as an investment vehicle, for their mutual enrichment and benefit. JP Morgan knew it would be able to extract management fees, and Foley & Lardner knew it would continue to receive attorneys' fees from JP Morgan and the Trust, with the consent of JP Morgan. In order to hide the fact that the divestment plan was a sham, the Trustees dissolved Janes Corporation under the pretense of a favorable taxation event, and immediately created Janes LLC as the new criminal enterprise, which immediately resumed the use of JP Morgan funds despite the self-described conflict.

<div align="center">203.</div>

Furthermore, during the same time period, from 2002 through the present, when the Beneficiaries demanded their shares of the Trust, the corporate forms in which the Trust funds were held were used as a nominal reason to deny that distribution. Thus, in their position as fiduciaries and, in Foley & Lardner's case,

<div align="center">71</div>

attorneys, knowing that the Beneficiaries would rely on their advice and counsel, and knowing that ultimately they would be able to self-deal in any event because of the corporate structures they created, the Trustees refused to distribute funds to the Beneficiaries because doing so would lead to adverse tax consequences as a result of the corporate form.

<div align="center">204.</div>

Moreover, repeatedly and through the same time period, whenever the Beneficiaries would raise questions about conflicts in representation – either by Foley & Lardner or JP Morgan – the Trustees would communicate with the Plaintiffs by wire or by U.S. Mail and assure them that no such conflict existed. Trustees did this knowing that this was untrue; knowing that the Plaintiffs were relying on them as fiduciaries; and knowing that the Trustees had the power to make or deny distributions because of the corporate form of their criminal enterprise: Only the Trustees could make distributions from Janes Corporation or Janes LLC. The Plaintiffs were therefore beholden to the Trustees for the money the Trustees should long ago have distributed to them.

<div align="center">205.</div>

The Trustees performed these acts for their own self-enrichment and to perpetuate their criminal enterprise.

<div align="center">206.</div>

The Trustees made these representations by interstate wire and mail, deliberately reaching into the States in which the Plaintiffs lived to do so. They

knew their representations were untrue, knew that the Plaintiffs would rely on them in their capacities as fiduciaries, knew that the representations and reliance would harm the Plaintiffs, and were indifferent to the consequences when the Plaintiffs and the Trust suffered harm as a result.

### 207.

The Trustees' pattern of self-dealing, as demonstrated by their determination to obtain releases from the Plaintiffs under guise of their fiduciary status, began over a decade ago and continues to this day. The Trust – the Plaintiffs' inheritance – is now a shell of its former size, having been mismanaged and destroyed by Defendants' self-dealing, which would not have happened but for Defendants' criminal enterprise.

### 208.

The Trustees controlled the enterprise – whether as Janes Corp. or as Janes LLC – in their efforts to defraud and steal from the Beneficiaries and the Trust corpus. Their behavior, as outlined above, represents a continuing pattern of activities, including securities fraud and mail and wire fraud, across state lines, for decades. The Plaintiffs and the Trust were directly and proximately harmed by reason of and as a result of the Trustees' acts, as demonstrated above.

### 209.

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; treble damages for Defendants' RICO violations; attorneys' fees and costs, for

Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT XI
## VIOLATIONS OF FLA. STAT. 895.01, et seq. ("FLORIDA RICO")

### 210.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

### 211.

The Trustees created an illegal enterprise – first as Janes Corporation, then as Janes LLC – in order to defraud and steal from the Plaintiffs in the several States in which the Plaintiffs live, including Florida. Janes Corporation and Janes LLC are mere vehicles for the Defendants' wrongful acts, and were used in the furtherance of their illegal scheme. That scheme, which is demonstrated in the Facts section of this Complaint, is in violation of Fla. Stat. 895.01, et seq. ("Florida RICO"). These acts are not merely isolated incidents, but rather part of a decades-long scheme to further the Trustees' interests by mail and wire fraud.

### 212.

Thus, for example, when the presence of a conflict between holding JP Morgan/BankOne funds and retaining JP Morgan as financial advisor and Trustee became unavoidable, the Trustees announced a plan to divest the trust of JP Morgan/BankOne funds. Immediately thereafter, without the consent of the

74

Beneficiaries, the Trustees conspired between each other by electronic mail – which was not shared with the Beneficiaries – to consent to use JP Morgan funds as an investment vehicle, for their mutual enrichment and benefit. JP Morgan knew it would be able to extract management fees, and Foley & Lardner knew it would continue to receive attorneys' fees from JP Morgan and the Trust, with the consent of JP Morgan. In order to hide the fact that the divestment plan was a sham, the Trustees dissolved Janes Corporation under the pretense of a favorable taxation event, and immediately created Janes LLC as the new criminal enterprise, which immediately resumed the use of JP Morgan funds despite the self-described conflict.

<center>213.</center>

Furthermore, during the same time period, from 2002 through the present, when the Beneficiaries demanded their shares of the Trust, the corporate forms in which the Trust funds were held were used as a nominal reason to deny that distribution. Thus, in their position as fiduciaries and, in Foley & Lardner's case, attorneys, knowing that the Beneficiaries would rely on their advice and counsel, and knowing that ultimately they would be able to self-deal in any event because of the corporate structures they created, the Trustees refused to distribute funds to the Beneficiaries because doing so would lead to adverse tax consequences as a result of the corporate form.

<center>75</center>

214.

Moreover, repeatedly and through the same time period, whenever the Beneficiaries would raise questions about conflicts in representation – either by Foley & Lardner or JP Morgan – the Trustees would communicate with the Plaintiffs by wire or by U.S. Mail and assure them that no such conflict existed. Trustees did this knowing that this was untrue; knowing that the Plaintiffs were relying on them as fiduciaries; and knowing that the Trustees had the power to make or deny distributions because of the corporate form of their criminal enterprise: Only the Trustees could make distributions from Janes Corporation or Janes LLC. The Plaintiffs were therefore beholden to the Trustees for the money the Trustees should long ago have distributed to them.

215.

The Trustees performed these acts for their own self-enrichment and to perpetuate their criminal enterprise.

216.

The Trustees made these representations by interstate wire and mail, deliberately reaching into the States in which the Plaintiffs lived to do so. They knew their representations were untrue, knew that the Plaintiffs would rely on them in their capacities as fiduciaries, knew that the representations and reliance would harm the Plaintiffs, and were indifferent to the consequences when the Plaintiffs and the Trust suffered harm as a result.

217.

The Trustees' pattern of self-dealing, as demonstrated by their determination to obtain releases from the Plaintiffs under guise of their fiduciary status, began over a decade ago and continues to this day. The Trust – the Plaintiffs' inheritance – is now a shell of its former size, having been mismanaged and destroyed by Defendants' self-dealing, which would not have happened but for Defendants' criminal enterprise.

218.

The Trustees controlled the enterprise – whether as Janes Corp. or as Janes LLC – in their efforts to defraud and steal from the Beneficiaries and the Trust corpus. Their behavior, as outlined above, represents a continuing pattern of activities, including securities fraud and mail and wire fraud, across state lines, for decades. The Plaintiffs and the Trust were directly and proximately harmed by reason of and as a result of the Trustees' acts, as demonstrated above.

219.

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; treble damages for Defendants' RICO violations; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT XI
## VIOLATIONS OF CALIFORNIA PENAL CODE § 186-186.8
## ("CALIFORNIA CONTROL OF PROFITS OF
## ORGANIZED CRIME ACT")

220.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

221.

The Trustees created an illegal enterprise – first as Janes Corporation, then as Janes LLC – in order to defraud and steal from the Plaintiffs in the several States in which the Plaintiffs live, including California. Janes Corporation and Janes LLC are mere vehicles for the Defendants' wrongful acts, and were used in the furtherance of their illegal scheme. That scheme, which is demonstrated in the Facts section of this Complaint, is in violation of California Penal Code § 186-186.8 (the "California Control of Profits of Organized Crime Act"). These acts are not merely isolated incidents, but rather part of a decades-long scheme to further the Trustees' interests by mail and wire fraud.

222.

Thus, for example, when the presence of a conflict between holding JP Morgan/BankOne funds and retaining JP Morgan as financial advisor and Trustee became unavoidable, the Trustees announced a plan to divest the trust of JP Morgan/BankOne funds. Immediately thereafter, without the consent of the Beneficiaries, the Trustees conspired between each other by electronic mail – which was not shared with the Beneficiaries – to consent to use JP Morgan funds

as an investment vehicle, for their mutual enrichment and benefit. JP Morgan knew it would be able to extract management fees, and Foley & Lardner knew it would continue to receive attorneys' fees from JP Morgan and the Trust, with the consent of JP Morgan. In order to hide the fact that the divestment plan was a sham, the Trustees dissolved Janes Corporation under the pretense of a favorable taxation event, and immediately created Janes LLC as the new criminal enterprise, which immediately resumed the use of JP Morgan funds despite the self-described conflict.

<div align="center">223.</div>

Furthermore, during the same time period, from 2002 through the present, when the Beneficiaries demanded their shares of the Trust, the corporate forms in which the Trust funds were held were used as a nominal reason to deny that distribution. Thus, in their position as fiduciaries and, in Foley & Lardner's case, attorneys, knowing that the Beneficiaries would rely on their advice and counsel, and knowing that ultimately they would be able to self-deal in any event because of the corporate structures they created, the Trustees refused to distribute funds to the Beneficiaries because doing so would lead to adverse tax consequences as a result of the corporate form.

<div align="center">224.</div>

Moreover, repeatedly and through the same time period, whenever the Beneficiaries would raise questions about conflicts in representation – either by Foley & Lardner or JP Morgan – the Trustees would communicate with the

<div align="center">79</div>

Plaintiffs by wire or by U.S. Mail and assure them that no such conflict existed. Trustees did this knowing that this was untrue; knowing that the Plaintiffs were relying on them as fiduciaries; and knowing that the Trustees had the power to make or deny distributions because of the corporate form of their criminal enterprise: Only the Trustees could make distributions from Janes Corporation or Janes LLC. The Plaintiffs were therefore beholden to the Trustees for the money the Trustees should long ago have distributed to them.

225.

The Trustees performed these acts for their own self-enrichment and to perpetuate their criminal enterprise.

226.

The Trustees made these representations by interstate wire and mail, deliberately reaching into the States in which the Plaintiffs lived to do so. They knew their representations were untrue, knew that the Plaintiffs would rely on them in their capacities as fiduciaries, knew that the representations and reliance would harm the Plaintiffs, and were indifferent to the consequences when the Plaintiffs and the Trust suffered harm as a result.

227.

The Trustees' pattern of self-dealing, as demonstrated by their determination to obtain releases from the Plaintiffs under guise of their fiduciary status, began over a decade ago and continues to this day. The Trust -- the Plaintiffs' inheritance -- is now a shell of its former size, having been mismanaged and destroyed by

Defendants' self-dealing, which would not have happened but for Defendants' criminal enterprise.

<div align="center">228.</div>

The Trustees controlled the enterprise -- whether as Janes Corp. or as Janes LLC -- in their efforts to defraud and steal from the Beneficiaries and the Trust corpus. Their behavior, as outlined above, represents a continuing pattern of activities, including securities fraud and mail and wire fraud, across state lines, for decades. The Plaintiffs and the Trust were directly and proximately harmed by reason of and as a result of the Trustees' acts, as demonstrated above.

<div align="center">229.</div>

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; treble damages for Defendants' RICO violations; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

<div align="center">

**COUNT XII**
**VIOLATIONS OF THE COLORADO ORGANIZED CRIME CONTROL ACT ("COCCA"), COLO. REV. STAT. § 18-17-101, *et seq.***

</div>

<div align="center">230.</div>

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

<div align="center">81</div>

231.

The Trustees created an illegal enterprise – first as Janes Corporation, then as Janes LLC – in order to defraud and steal from the Plaintiffs in the several States in which the Plaintiffs live, including Colorado. Janes Corporation and Janes LLC are mere vehicles for the Defendants' wrongful acts, and were used in the furtherance of their illegal scheme. That scheme, which is demonstrated in the Facts section of this Complaint, is in violation of the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-101 et seq. These acts are not merely isolated incidents, but rather part of a decades-long scheme to further the Trustees' interests by mail and wire fraud.

232.

Thus, for example, when the presence of a conflict between holding JP Morgan/BankOne funds and retaining JP Morgan as financial advisor and Trustee became unavoidable, the Trustees announced a plan to divest the trust of JP Morgan/BankOne funds. Immediately thereafter, without the consent of the Beneficiaries, the Trustees conspired between each other by electronic mail – which was not shared with the Beneficiaries – to consent to use JP Morgan funds as an investment vehicle, for their mutual enrichment and benefit. JP Morgan knew it would be able to extract management fees, and Foley & Lardner knew it would continue to receive attorneys' fees from JP Morgan and the Trust, with the consent of JP Morgan. In order to hide the fact that the divestment plan was a sham, the Trustees dissolved Janes Corporation under the pretense of a favorable taxation

event, and immediately created Janes LLC as the new criminal enterprise, which immediately resumed the use of JP Morgan funds despite the self-described conflict.

<div align="center">233.</div>

Furthermore, during the same time period, from 2002 through the present, when the Beneficiaries demanded their shares of the Trust, the corporate forms in which the Trust funds were held were used as a nominal reason to deny that distribution. Thus, in their position as fiduciaries and, in Foley & Lardner's case, attorneys, knowing that the Beneficiaries would rely on their advice and counsel, and knowing that ultimately they would be able to self-deal in any event because of the corporate structures they created, the Trustees refused to distribute funds to the Beneficiaries because doing so would lead to adverse tax consequences as a result of the corporate form.

<div align="center">234.</div>

Moreover, repeatedly and through the same time period, whenever the Beneficiaries would raise questions about conflicts in representation – either by Foley & Lardner or JP Morgan – the Trustees would communicate with the Plaintiffs by wire or by U.S. Mail and assure them that no such conflict existed. Trustees did this knowing that this was untrue; knowing that the Plaintiffs were relying on them as fiduciaries; and knowing that the Trustees had the power to make or deny distributions because of the corporate form of their criminal enterprise: Only the Trustees could make distributions from Janes Corporation or

<div align="center">83</div>

Janes LLC. The Plaintiffs were therefore beholden to the Trustees for the money the Trustees should long ago have distributed to them.

235.

The Trustees performed these acts for their own self-enrichment and to perpetuate their criminal enterprise.

236.

The Trustees made these representations by interstate wire and mail, deliberately reaching into the States in which the Plaintiffs lived to do so. They knew their representations were untrue, knew that the Plaintiffs would rely on them in their capacities as fiduciaries, knew that the representations and reliance would harm the Plaintiffs, and were indifferent to the consequences when the Plaintiffs and the Trust suffered harm as a result.

237.

The Trustees' pattern of self-dealing, as demonstrated by their determination to obtain releases from the Plaintiffs under guise of their fiduciary status, began over a decade ago and continues to this day. The Trust – the Plaintiffs' inheritance – is now a shell of its former size, having been mismanaged and destroyed by Defendants' self-dealing, which would not have happened but for Defendants' criminal enterprise.

238.

The Trustees controlled the enterprise – whether as Janes Corp. or as Janes LLC – in their efforts to defraud and steal from the Beneficiaries and the Trust

corpus. Their behavior, as outlined above, represents a continuing pattern of activities, including securities fraud and mail and wire fraud, across state lines, for decades. The Plaintiffs and the Trust were directly and proximately harmed by reason of and as a result of the Trustees' acts, as demonstrated above.

239.

Plaintiffs are therefore entitled to all consequential and incidental damages, in an amount to be determined by the enlightened conscience of a jury; treble damages for Defendants' COCCA violations; attorneys' fees and costs, for Defendants' bad faith and stubborn litigiousness; and punitive damages, in an amount to be determined by the enlightened conscience of the jury, to punish Defendants for their unlawful conduct and deter them from similar conduct in the future.

## COUNT XIII
## INJUNCTIVE RELIEF

240.

Plaintiffs restate Paragraphs One through Seventy-Four above as if fully stated herein.

241.

The Trustees have, as demonstrated above, engaged in a pattern of self-dealing that has depleted the Trust. As demonstrated above, they are now engaged in that pattern of self-dealing to wind down the Trust's assets, in order to defend themselves from Plaintiffs' attempts to identify the scope of their wrongdoing, and in order to perpetuate their enterprise.

242.

Plaintiffs therefore face a real danger of immediate and irreparable harm as a result of Defendants' actions. If left unchecked, Trustees will completely deplete the Trust's corpus, leaving the Defendants without their grandmother' bequest.

243.

In light of the foregoing, the Trustees' wrongful acts must immediately cease.

244.

Plaintiffs pray that the Trustees be enjoined and restrained from drawing on Trust funds during the pendency of this litigation. Plaintiffs also pray that the Trustees be removed from their position as Trustees during the pendency of this litigation; that they be compelled to provide an accounting of their acts as Trustees from the inception of the Trust to the present; and that new Trustees be appointed in their stead for the pendency of this litigation. Furthermore, should Plaintiffs prevail in demonstrating the Defendants' wrongdoing, Plaintiffs pray that Trustees be permanently removed from their positions as Trustees, and new Trustees be appointed.

**NOW THEREFORE**, the Plaintiffs respectfully request the following:

a.) The Court grant Plaintiffs actual and compensatory damages in the amount of no less than $2,000,000.00 for fees taken by Foley & Lardner;

b.) The Court grant Plaintiffs actual and compensatory damages in the amount of no less than $2,000,000.00 for fees taken by JP Morgan;

86

c.)     The Court grant Plaintiff actual and compensatory damages in the amount of no less than $6,000,000.00 the amount of money the Trust lost from 2000-2011;

d.)     The Court grant Plaintiffs their reasonable Attorney's fees;

e.)     The Court grant treble damages against the Defendants for 3 times the actual damages to the Plaintiff in the amount of no less than $30,000,000.00;

f.)     The Court grant the termination of the Trust or replacement of the Trustees by other, neutral third parties;

g.)     Trial by a jury of twelve on all counts; and

h.)     The Court grant such other relief and damages that it deems proper and just.

Respectfully Submitted this 24 day of _____ 2011.

**THE KATZ LAW FIRM, P.C.**

By: _____
    Sam Katz Esq.
    GA Bar #409058
    5883 Glenridge Drive Suite 160
    Atlanta, GA 30328
    Phone 404-307-2339
    Fax 678-827-0884

87

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

J. Scott DeWind, Susan Fronsoe,           ]
Laura F. Bennett, Jane D. Chason,         ]
Gerald M. "Bey" Holbrook,                 ]
John DeWind, and Michael S. Fronsoe,      ]
individually, as Members of Janes LLC     ]
and Shareholders of Janes Corporation,    ]
and in their capacities as beneficiaries of ]
the 1967 Jane Brooks Holbrook Trust,      ]
and other alleged trusts created          ]
by the Defendants,                        ]
                                          ]   Civil Action # _____
*Plaintiffs,*                             ]
                                          ]
v.                                        ]
                                          ]
JP Morgan Chase & Co., John F. Callan,    ]
John M. Phillips, Michael P. Sessa,       ]
Foley & Lardner, LLP,                     ]
Janes Corporation, and Janes LLC,         ]
                                          ]
*Defendants.*                             ]

## AMENDED COMPLAINT AND PRAYER FOR INJUNCTIVE RELIEF

## CERTIFICATE OF SERVICE

I hereby certify that on August 2\_ th, 2011, I served a copy of the foregoing via the Court's electronic filing system and by United States Mail, first class postage prepaid and addressed to the following:

1.)   JP Morgan Chase and Co.

2.)   CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361

3.)   John F. Callan at 777 E. Wisconsin Avenue, Milwaukee, WI 53202-5306

88

4.)   Foley & Lardner Corp., 777 E. Wisconsin Ave., Ste. 3800, Milwaukee, Wisconsin 53202-5306

5.)   Harry W. MacDougald, Caldwell & Watson, LLP, Two Ravinia Drive, Suite 1600, Atlanta, Georgia  30346

**THE KATZ LAW FIRM, P.C.**
By:   _____
        Sam Katz Esq.